998 So.2d 344 (2008)
Lovenda Janice Allen SONNIER, Plaintiff-Appellant
v.
Andrea Sonnier CONNER, Thomas Sonnier and Diamond McCattle Company LLC, Defendants-Appellees.
No. 43,811-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
Rehearing Denied January 8, 2009.
*347 Marshall L. Sanson, for Appellant.
W. Alan Pesnell, Richard Woolbert, for Defendants-Appellees.
Before GASKINS, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
This case was instituted by plaintiff thirteen years after her immovable property was transferred by recorded cash sale deeds to certain family members in 1993. *348 Plaintiff alleges that the 1993 sales were simulations, that she has remained in possession of the property, and that her ownership, which was intended to be unaffected by the sales, should be recognized. Prior to institution of the suit, those family members who acquired the property had died, and their children, who are defendants, executed a mineral lease on the property and transferred the property to a family limited liability company, prompting plaintiff's suit. Following a motion for summary judgment by the defendants and their limited liability company, a co-defendant, the trial court dismissed plaintiff's claims. Finding that revised Civil Code Articles 1848 and 2480 allow for evidence of the alleged simulated sales which creates unresolved issues of material fact, we reverse the motion for summary judgment insofar as it dismissed plaintiff's claims against the children of the deceased vendees of the 1993 sales. We affirm the trial court's dismissal of plaintiff's claims against the limited liability company on the peremptory ground of no cause of action.

Facts and Procedural History
In this case the plaintiff, Lovenda Allen Sonnier (hereinafter "Plaintiff"), claims that through a sequence of simulated cash sale deeds in the late 1980s and early 1990s, title to certain tracts of land in Jackson Parish was placed in the names of defendants' parents, Rennie A. Sonnier and Gloria Sonnier (hereinafter the "Sonniers"). Mr. Sonnier was Plaintiff's brother-in-law. The Sonniers later died with record title held in their names. In her petition and affidavit filed in opposition to the summary judgment, which was ultimately rendered against her by the trial court, Plaintiff asserts that she "has always been in possession of both parcels of property" comprising the disputed land.
The disputed property consists of a large tract and two smaller tracts in separate sections in Jackson Parish. The larger tract contains 75 acres, and the two smaller tracts contain about a half-acre and two acres. The tracts will be collectively referred to as "the Property."
Plaintiff alleged that she executed two cash sale deeds in 1988 to her niece, Sharon Allen McEachern, wife of Jerry Turner McEachern (hereinafter the "McEacherns"). One deed conveyed the 75-acre tract and a copy of that deed was filed in the record in connection with the motion for summary judgment.[1] That deed, which was recorded in 1988, reveals a cash consideration of $15,000. Another deed to the McEacherns, alleged to be a cash sale, was executed later in 1988 and pertained to the other smaller tracts. No copy of that deed is in the record of this proceeding.
Five years later, the McEacherns conveyed the Property to the Sonniers. Again two deeds were utilized, one for the 75-acre tract and another for the smaller tracts. The deed for the 75-acres was executed as an authentic act on April 30, 1993, for a cash consideration of $15,000, and recorded in Jackson Parish on May 28, 1993. The record contains no copy of the deed for the smaller tracts. The allegations from Plaintiff and the McEacherns (after their intervention in this action) are that the 1993 deeds were simulated sales to the Sonniers.
Gloria Sonnier died on October 5, 1994, and her succession was opened in Calcasieu Parish. Her husband Rennie, and their two children Thomas and Andrea, *349 signed the detailed descriptive list filed in the succession proceeding, showing only her community property interest in a single tract in Calcasieu Parish as "all items" of immovable property comprising her succession. A judgment of possession for her succession was rendered in 1995, and the Property was not described in the judgment.
Rennie Sonnier died on May 30, 2003, survived by Thomas Sonnier and Andrea Conner (hereinafter "Defendants"). The detailed descriptive list for his succession described only immovable property situated in Calcasieu Parish. The Judgment of Possession rendered on April 24, 2004, recognized his two children as his sole heirs.
The next recorded instrument affecting the Property detailed in the petition occurred when Defendants executed an oil, gas and mineral lease in favor of Devon Energy Production Company, LLC. The lease was recorded on August 5, 2004. The following day, Defendants petitioned the Calcasieu Parish District Court to amend each of their parent's succession proceedings, alleging the following:
Since entry of the [Judgment of Possession], petitioners have discovered two (2) pieces of immovable property in which the decedent held an interest inadvertently omitted from the Sworn Detailed Descriptive List of Assets and Liabilities filed herein, . . . .
As a result of this action, amended judgments of possession recognizing Thomas James Sonnier and Andrea Sonnier Conner as owners of an undivided one-half interest each in the Property were rendered on August 6, 2004.
Plaintiff's petition next alleged Defendants' disposition of the Property in August 2004, as follows:
7.
Andrea Sonnier Conner and Thomas James Sonnier executed an Act of Exchange with Diamond McCattle Company, L.L.C., a Louisiana Limited Liability Company, whose mailing address is 2168 West Lincoln Road, Lake Charles, Louisiana 70605, Manager, Andrea Sonnier Conner. The Act of Exchange filed August 30, 2004, Book 362, Page 41 under DR # 358356, shows both properties were given to Diamond McCattle Company, L.L.C., in exchange for Thomas James Sonnier receiving a 50% interest in Diamond McCattle Company LLC and Andrea Sonnier Conner receiving a 50% interest in Diamond McCattle Company LLC.
Other than this allegation, there is no other evidence pertaining to Diamond McCattle Company, L.L.C. (hereinafter "the LLC"), also a defendant in this action. Defendants and the LLC (hereinafter "Appellees") argue that the LLC is now the owner of the Property, and protected in its purchase of the Property under the public records doctrine.
The final instruments of title purportedly affecting the Property were two cash sale deeds recorded in 2005. The deeds were allegedly executed twelve years earlier, on April 30, 1993, by the Sonniers as vendors, in favor of the Plaintiff. One deed allegedly reconveyed the smaller tracts to Plaintiff, but no copy of this deed is filed in the record by the parties. The other deed, which is filed in evidence, reconveyed the 75-acre tract for a cash consideration of $15,000. This number was typed onto the deed.
This deed for the 75-acre tract (hereinafter the "Blank Deed") was the subject of two affidavits Appellees filed in support of their motion for summary judgment, executed by Jared T. Conner and Tara Guillory Vance. These individuals signed as witnesses *350 on the instrument, and testified that they signed the Blank Deed at the Sonniers' home without the Plaintiff being present. When they witnessed the Blank Deed, no purchaser's name or execution date was filled in on the printed deed form. The witnesses averred that no notary was present. Neither one of the affidavits addressed whether the Sonniers in fact signed the Blank Deed at that time along with the witnesses. The actual date when the witnesses signed the Blank Deed is also unreported.
The copy of the Blank Deed filed in evidence after its recordation reveals that the missing information identified by the witnesses was written in the blanks on the printed form. The recorded instrument contains the signatures of the Sonniers and a notary. In the blank for the vendee on the printed form, the name of the Plaintiff is handwritten and likewise, the date "April 30, 1993," is handwritten on the instrument. Comparing the Blank Deed and the prior deed from the McEacherns to the Sonniers, the signatures of the notary before whom both acts were passed appear to be from one and the same person, and both instruments are described as being executed in his (or her) office in Winn Parish.
On November 29, 2006, Plaintiff sued Defendants and the LLC, asserting the occurrence of the simulated sales. Plaintiff sought recognition of her ownership of the Property and an accounting for the monies received by Defendants under the Devon Energy oil and gas lease.
Defendants and the LLC reconvened, asserting ownership of the Property. They also prayed for cancellation of the Blank Deed.
On September 4, 2007, the Defendants and the LLC moved for summary judgment, urging the following:
Movers show that, as a matter of law, [Plaintiff] cannot allege an absolute simulation among the parties in this litigation. Additionally, because the allegations are all related to claims of absolute simulation, [Plaintiff] is barred from introducing any parol evidence on these matters whatsoever based on the death of Rennie, and based on the substantive law of simulations.
The motion for summary judgment included Rennie and Gloria Sonnier's succession proceedings, Defendants' discovery requests, and affidavits from the witnesses to the Blank Deed.
Plaintiff opposed the summary judgment motion. Her affidavit declared that the deeds in question were simulations, and that she maintained possession of the Property. The hearing on the motion for summary judgment was set for argument on October 30, 2007.
Before the hearing could be held, the McEacherns filed a Petition for Intervention into the suit on October 22, 2007. The trial court signed the order allowing the intervention the next day. The petition for intervention alleged that the McEacherns received the Property through simulated sales from the Plaintiff and transferred it to "the brother-in-law," Rennie A. Sonnier, by simulated sales, and that no money was involved in "the simulated sale." The McEacherns prayed that the simulations be set aside, recognizing Plaintiff's ownership.
On October 24, 2007, the Defendants and the LLC filed peremptory exceptions of no right of action and no cause of action with regard to the McEacherns' intervention and the Plaintiff's petition, arguing for dismissal of both. These exceptions were set for hearing in December.
The hearing on the motion for summary judgment occurred as scheduled on October 30, 2007. After argument, the trial *351 court found that no genuine issue of material fact existed, and granted summary judgment in favor of the Appellees, with the LLC declared the owner of the Property. The Blank Deed and the other deed involving the smaller tracts were declared null and void, and ordered cancelled from the records of Jackson Parish.
Following the ruling, Plaintiff moved the court to reconsider. The matter was set for rehearing with the other pending matters concerning the McEacherns' intervention. The McEacherns amended their petition to allege the existence of counterletters in the form of the blank cash sale deeds executed by the Sonniers that retransferred the Property to Plaintiff. The court permitted the amended petition for intervention on January 17, 2008.
After hearing argument on all the remaining matters, the trial court denied Plaintiff's motion to reconsider the summary judgment, ruling in favor of Appellees. The trial court granted Appellees' motion to dismiss the McEacherns' petition for intervention as moot, without prejudice. Appellees' exceptions were not ruled upon. The Plaintiff appeals.

Discussion
Plaintiff's action is for declaration of a sequence of simulated acts of sale, where the understanding and agreement of the Plaintiff, the McEacherns, and the Sonniers was to allow ownership of the Property to remain with Plaintiff. Plaintiff seeks reversal of the summary judgment, claiming that Civil Code Article 2480[2] provides a presumption of simulated sales affecting the Property due to the uncontested allegations of Plaintiff's continued possession of the Property. She asserts that a material fact dispute exists concerning the Sonniers' payment or nonpayment of any price or consideration for the transfers of the Property. She also asserts that the Blank Deed and the other deed to the smaller tracts executed by the Sonniers amount to counterletters in her favor, in recognition of the simulated sales.
To the contrary, Defendants and the LLC dispute the application of Article 2480, which they insist provides a presumption of a simulated sale only to creditors and heirs of a vendor who attack a sales transaction. They argue that Plaintiff must produce a written counterletter to overcome the McEacherns' sale of the Property to the Sonniers. Due to the unusual confection of the Blank Deed, as revealed by the affidavits of the two witnesses, it was not a valid reconveyance of the Property according to Appellees, and may not be asserted and established as a counterletter by the use of extrinsic evidence offered to alter its written provisions. Finally, the Defendants argue that both they and their LLC are protected third parties under the so-called "deadman's statute," La. R.S. 13:3721, et seq., and the public records doctrine. Since the recorded deeds conveyed the Property to the Sonniers in unambiguous terms, Appellees argue that any secret equity concerning a simulation affecting those conveyances, which might only be established by parol evidence, cannot alter the rights they acquired as protected third parties.
The cash sale deeds to the Sonniers in 1993 unambiguously, on the face of the instruments, transferred title and were duly recorded. Before the Blank Deed and the other deed to the smaller tracts *352 were recorded in 2005, indicating a reconveyance of the Property to the Plaintiff, the Sonniers had died and their heirs had transferred the Property by recorded deed to the LLC. Whether a genuine issue of material fact exists mandating reversal of this summary judgment requires the determination of the applicable legal standard for proof of the true intent behind a simulation and its effects on parties other than those who executed the simulation. We will first address Louisiana's parol evidence rule and its application in the setting of this alleged simulation. In connection with that consideration, we will review the presumption of simulation addressed in Article 2480. We will next address Appellees' claim of third party status and protection under the laws of registry. After such review of the applicable law, we will then determine if Plaintiff's assertion of material fact issues is correct.

I.
The Civil Code defines a simulation as follows:
A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties.
If the true intent of the parties is expressed in a separate writing, that writing is a counterletter.
La. C.C. art. 2025. The simulation is a feigned or pretended sale clothed in the formalities of a valid sale. Russell v. Culpepper, 344 So.2d 1372, 1377 (La.1977). It is a sham and, as a result, an absolute nullity. Id.
Although a simulation in many instances is intended to operate as a fraud on one's creditors or to impair the rights of forced heirs, that need not be the case. As Planiol observed, "a person can have honest reasons for concealing from third persons the veritable nature of his transactions and the state of his affairs, but this is rare." 2 M. Planiol, Traite elementaire de droit civil, no. 1190 (11th ed. La. State L. Inst. transl.1959). However, regardless of the motive concerning one's creditors or forced heirs, or any other fraudulent motive giving rise to the simulation, disputes sometime arise thereafter between the parties to a simulation when the one receiving the simulated transfer refuses to later acknowledge the simulation.
Plaintiff's assertions in this case, which have not been disputed by the Appellees in their motion for summary judgment, are that she remained in possession of the Property and that no price was ever paid by the McEacherns or the Sonniers. She claims therefore that all intended for her to remain as owner. This situation results in an absolute simulation, which is defined in Article 2026 of the Civil Code, as follows:
A simulation is absolute when the parties intend that their contract shall produce no effects between them. That simulation, therefore, can have no effects between the parties.
This contrasts with a relative simulation, where the parties intend that their contract produce effects between them which are different from those recited in their contract. La. C.C. art. 2027.
The Civil Code's writing requirement for the sale or transfer of immovable property states that "an authentic act" or "act under private signature" must be executed by the parties. La. C.C. arts. 1839 and 2440. Article 1839 places that requirement in the chapter on "Proof of Obligations" and is followed in that same chapter by Louisiana's parol evidence rule, Article 1848, which provides:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be *353 admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
Significantly, the source provision for Article 1848, former Civil Code Article 2276,[3] only provided the substance of the first sentence of the new article, which was enacted in 1984 in the revision of the Civil Code articles for obligations. Also in the first sentence of the new article, the rule expressly addresses parol evidence offered to "negate" altogether the effect of the written act.
In the case of an absolute simulation, the apparent written act of the parties would be negated in its entirety if parol/extrinsic proof of the true intent of the parties is permitted.
Prior to 1984, jurisprudential exceptions to the parol evidence rule had developed, even with regard to transactions involving immovables. In 1984, as a new codal addition to the parol evidence rule, express exceptions to the general rule prohibiting parol evidence were set forth. The legislature added these exceptions in the second sentence and included the allowance for proof of a simulation. Revision Comment (c) indicates that "simulation" as used in Article 1848 refers to either the absolute or relative simulation.
The exception regarding simulations under Article 1848 contains no limitation that the parol/extrinsic evidence may only be offered by an heir or creditor of the vendor to attack the simulated sale or transfer of property. Thus, it indicates that either party to a simulation may prove the true intent of the parties to the transaction by oral/extrinsic evidence. The exception regarding simulations likewise does not expressly turn on the important fact of the continued possession of the transferor which in the case of immovables, might be considered a prerequisite before any written act transferring an immovable can be challenged. As reviewed below, continued corporeal possession by a seller is the predicate fact for the presumption of simulation addressed in Article 2480.
This exception for simulations under Article 1848 indicates that for proof of the true intent of the parties that is not reflected on the sham written act, "testimonial or other evidence" may now be admitted as between the parties to "negate" the simulated act. In the context of an absolute simulation of a sale of an immovable, the purported transferor/seller would not be offering such evidence to prove an oral transfer of the property back to him. He would be offering the evidence to show that the prior written act of sale did not reflect the parties' true intent to their "mutual agreement" for the simulation. La. C.C. art. 2025. As such, the exception for simulations now allowed in the second sentence of Article 1848 is analogous to another exception also listed in the article, the exception for vices of consent.
Before the inclusion of the exceptions to the parol evidence rule in new Article 1848, the jurisprudence recognized an action for reformation for vices of consent in a written instrument purportedly transferring an immovable. The reformation action even allowed the written act of sale to be negated or annulled in substantial part as between the parties to a sale because of their mutual intent to the contrary. Cordova v. Cordova, 382 So.2d 1050 (La.App. 2d Cir.1980). In Wilson v. Levy, 234 La. *354 719, 101 So.2d 214 (1958), the vendee of a valid recorded sale of 330 acres claimed that his vendor could not present testimonial and other evidence to show that the thirty acre portion of the tract upon which she had always lived was never intended to be sold. The court rejected the notion that the parol evidence rule under former Article 2276 required the vendor to produce only written evidence to show the parties' alleged vice of consent regarding the thirty acres. The vendor proved the error and reformed the deed by proof of her continued possession of the thirty acre tract, the testimony of the realtor involved with the sale ten years earlier, and other extrinsic evidence.
The new codal exceptions to the parol evidence rule in the second sentence of Article 1848 are not, however, absolute. The offered evidence "may" only be admitted "in the interest of justice," giving the court discretion to reject testimonial proof, and to require written evidence, which in the case of a simulation would be a separate writing or counterletter. One important fact, which the Civil Code elevates in significance under Article 2480, is the continued possession of the property by the purported transferor in a simulation involving the writing requirement for immovables. Corporeal possession, when retained by a vendor under circumstances where there is no written evidence to explain such possession such as a usufruct or lease, is a fact beyond the mere testimony of the parties that raises the question of the parties' intent to the sale. In the absence of evidence of such continued possession, the transferor's attack on the written act of sale as an absolute simulation may cause the court to require a written counterletter as evidence to establish the simulation.[4]
In considering the second sentence of Article 1848 and the exceptions now embodied in the Code, we note that some of the revision comments to the new articles on obligations appear to draw a distinction between absolute and relative simulations concerning the necessity of a written counterletter and a total bar on testimonial or other evidence to establish an absolute simulation between the parties. See, Revision Comment (b),[5] La. C.C. art. 2026 and *355 Revision Comment (c), La. C.C. art. 1848. However, as discussed above, the express language of Article 1848 makes no such distinction. Proof of "a simulation," whether relative or absolute, between the parties "may" be allowed "in the interest of justice" on the strength of "testimonial or other evidence."
As recognized in the jurisprudence before the addition of the new exception in Article 1848, a basis for the allowance of parol/extrinsic evidence to resolve a dispute between the parties to a relative simulation was the Civil Code's provision concerning an untrue expression of cause. Article 1970 states the principle as follows:
When the expression of a cause in a contractual obligation is untrue, the obligation is still effective if a valid cause can be shown.
The jurisprudence allowed that "the motive or real consideration can always be established by parol evidence," and that "the cause of a contract is always open to proof explanatory of its nature, as between the parties." Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960). Thus, the terms of the feigned written act in a relative simulation could be varied by parol/extrinsic evidence without the need for a written counterletter, so that as between parties the true cause of their simulated act can be established.
Regarding an absolute simulation, is "cause" for the parties' undertaking and agreement for the execution of the simulated written act altogether nonexistent since the parties intend that their overall undertaking shall produce no effects between them? We think not. Article 2025 defines a simulation, whether absolute or relative, as a "mutual agreement." Legal cause does exist for the absolute simulation, and the party in whose favor the feigned transfer of an immovable has occurred is obligated to restore written title. Therefore, the application of the principle of Article 1970 would also apply to a dispute between the parties over an absolute simulation.
Such a dispute over an absolute simulation did occur on occasion in the jurisprudence prior to the 1984 revision, and despite the express prohibition of parol evidence under former Civil Code Article 2276, the simulation was proven without a written counterletter. In Succession of Combre, 217 La. 955, 47 So.2d 734 (1950), the wife of the decedent sued to set aside the decedent's sale of the family residence to his sister, alleging that an absolute simulation had occurred four months before his death. This action therefore presented a dispute between the parties in which the widow sought the return of her community interest in the immovable by parol/extrinsic evidence in contradiction to her husband's written act of sale of her interest as the head and master of the community. As administratrix of her husband's succession, she also sought the recognition of the estate's one-half interest in the property. Significantly, no written counterletter executed by the decedent and his sister was produced to negate the effect of the written act of sale. Nevertheless, the court allowed the absolute simulation to be established by parol/extrinsic evidence, proving the nonpayment of the price for the sale and requiring the return of the wife's and the transferor's interests in the title to the immovable property.
The key to the court's allowance of parol evidence in Succession of Combre was the retained corporeal possession of the property *356 by the seller before his death. Additionally, the plaintiff continued to reside in the home after her husband's death, and the court acknowledged the evidence that the defendant allowed such possession after the death and before the lawsuit commenced without any claim for rent or assertion of ownership. The court therefore applied the legal presumption of Civil Code Article 2480 in plaintiff's favor. Although this application of Article 2480 was arguably more expansive than recognized at that time in the jurisprudence, as we will next discuss, the seller's continued corporeal possession was a threshold evidentiary fact of such significance that its existence did not leave the attack on the written act of sale in Succession of Combre resting merely on testimonial evidence.[6]
At the time of the alleged simulated sales to the Sonniers in 1993, the revision of Title VII of the Civil Code, "Of Sale," had not yet occurred and Article 2480 read as follows:
In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and, with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.
After Article 2840 was revised in 1993,[7] the presumption of simulation was expressed as follows:
When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation.
If this article applies to disputes between the parties, a view which is opposed by Appellees, the rebuttable presumption would certainly mean that the transferor of the simulated sale, having retained corporeal possession, would not be required to produce a written counterletter to prove the prior act an absolute simulation. Evidence of the retained corporeal possession alone would shift the burden of proof to the vendee to prove that no simulation occurred. Under the former version of Article 2480, the presumption was recognized when the plaintiff claiming a simulation was an heir of the transferor. The cases generally then turned on the defendant/vendee's ability to prove actual payment of the price, showing the reality of the sale; in those cases, no written counterletter was required. See, Hogan v. McKeithen, 527 So.2d 982 *357 (La.App. 2d Cir. 1988), and cases cited therein.
Nevertheless, because of the language in the former version of the article specifying a usufruct retained by the vendor or a precarious title, dicta in the jurisprudence stated that the evidentiary presumption expressed in Article 2480 did not extend to the parties that executed the written simulated act of sale. For example, referring to Article 2480 in the case of Roe v. Bundy's Heirs, 45 La. Ann. 398, 12 So. 759 (1893), the court said:
[B]ut this rule does not extend to the contracting parties. As between them the authentic act is full proof of the agreement contained in it, unless it be declared and proved a forgery, (Civil Code, art. 2236) or, in the absence of any allegation of fraud or error, by the production of a counter letter, or something equivalent.
Id., 12 So. 759, 45 La. Ann. at 402-403. See also, Succession of Zebriska, 119 La. 1076, 44 So. 893 (1907); Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); James Harvey Ramsey Estate, Inc. v. Pace, 467 So.2d 1202 (La.App. 2d Cir. 1985), writ denied, 472 So.2d 918 (La. 1985). In each of these cases, however, this conclusion was dicta because the suits involved petitory actions where the vendor's retained possession was asserted for the purpose of proof of acquisitive prescription against the heirs of the vendee, and the sales in question may have in fact been valid sales with the payment of a price.
Regardless of the prior jurisprudential issues over the construction and application of former Article 2480, the present version of the article will govern this case and determine whether the presumption now applies. The rebuttable presumption being procedural in nature and not substantive, the new article applies although the facts concerning the alleged simulated sales to the Sonniers occurred prior to revision of the article. La. C.C. art. 6; Wood v. Wood, 424 So.2d 1143 (La.App. 1st Cir.1982).
After the revision, the language of new Article 2480 is written as a compound sentence and appears to express two separate but related ideas in its combined statements. The presumption set forth in the first independent statement can be construed as applying between the parties in a contested sale, where the seller seeks to restore his ownership claiming an absolute simulation. Despite the prior jurisprudential discussions of the meaning of former Article 2480, Succession of Combre, supra, did apply the presumption of Article 2480 in a setting where the surviving spouse, not an heir or creditor, sought against the vendee to declare her husband's act of sale of community property an absolute simulation.
The second statement of the revised article addresses the situation involving the claim of a vendor's heir or creditor who is not a party to the simulated act, and states that the parties[8] must prove their contract is not a simulation. Revision Comment (a) to Article 2480 points out that third parties acquiring an immovable from the vendee of a recorded simulated act of sale would have protection under the law of registry and the public records doctrine, and would therefore not need the presumption afforded by Article 2480. This indicates that the specific purpose of the second sentence is to address the rights of those third parties not so protected who benefit from the presumption.
*358 As with separate statutes, differing provisions or statements in a single statute should be construed, if possible, to allow each provision to stand and be given effect. Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240; Simmons v. Berry, 98-0660 (La.App. 1st Cir.12/22/00), 779 So.2d 910. Reviewing Article 2480 under this principle, we find that the first of its provisions applies to afford a vendor who retains possession a rebuttable presumption of simulation in a dispute between the parties to an alleged simulated sale. There is no reason indicated by the language of the statute to make the second statement of Article 2480 a limitation on the application the first general expression of the presumption. Furthermore, with Louisiana's limited forced heirship law, the purpose of setting aside a simulated sale by either a vendor or his heir is the same  to establish the true intent of the parties. It can no longer only be construed to give heirs heightened protection for the legitime. Under Appellees' construction, an anomaly could very well occur in any case where the vendor institutes the action to declare an absolute simulation against the vendee with the applicable burden of proof changing during the course of the litigation by his death. Instead, both the vendor and his heir receive the benefit of the presumption. Finally, this view of Article 2480 is in keeping with our construction of Civil Code Article 1848, which allows in the interest of justice, such vendor to present evidence of his retained corporeal possession and other parol/extrinsic evidence to establish that the written act in question was an absolute simulation without the necessity of a written counterletter. Accordingly, we reject Appellees' argument that Article 2480 provides the rebuttable presumption only to an heir or creditor of the seller.
Therefore in summary, before we address Appellees' claims that they are protected third parties, the Plaintiff and the McEacherns as parties[9] to the alleged simulated sales of the Property to the Sonniers could present testimony and other evidence concerning their retained corporeal possession of the Property, the nonpayment of the price and their intentions regarding the sales to the Sonniers. Such evidence is admissible to negate the effect of the written acts of sale under the authority of Articles 1848 and 2480. The rebuttable presumption of Article 2480 will operate in her favor upon her proof of the predicate fact of her corporeal possession. See, La. C.E. art. 301, et seq. Finally, Plaintiff needs no written counterletter.
Moreover, even though the Blank Deed is not a counterletter by which the Sonniers acknowledged that the prior acts of sale were intended as sham transactions, the testimony of the "witnesses" to the Blank Deed offered by Appellees in support of their motion for summary judgment *359 does not remove all issues of material fact concerning the Blank Deed's effect as an actual sale of the Property by the Sonniers. The witnesses do not reveal when the Sonniers signed the Blank Deed or how the Plaintiff's name as vendee of the instrument was supplied. Thus the Blank Deed, now completed and in evidence in opposition to the motion for summary judgment, shows unresolved fact issues that arose after the witnesses dealt with the blank instrument, and on its face reveals a sale by the Sonniers to Plaintiff. The fact that the Blank Deed was recorded after the conveyance to the LLC only presents an issue if the LLC is a protected third party.

II.
The protection afforded by the law of registry, which Appellees claim, is now embodied in Civil Code Article 3342, as follows:
A party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recordation acquires an interest in or over the immovable to which the instrument relates.
Article 3343 then defines a third person as "a person who is not a party to or personally bound by an instrument." Regarding the Plaintiff's recordation in 2005 of the Blank Deed, Article 3338(1) provides:
The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
The instruments at issue are the alleged simulated sales of the Property to the Sonniers. Plaintiff sues to enforce the mutual agreement regarding the obligation of the Sonniers to return to Plaintiff the record title to the Property. The Defendants, as the children and heirs of the Sonniers, were not parties to the instruments and the alleged simulation. However, they are persons who are personally bound by the alleged mutual agreement for the simulation as the heirs of their parents. The Defendants' acceptance of their parents' successions obligates them for the mutual agreement of their parents' simulation. La. C.C. art. 961. Therefore, under Article 3343's definition, Defendants are not protected third parties.
Regarding the so-called "deadman's statute," La. 13:3721,[10] the statute *360 has been held inapplicable in suits to annul and set aside a sale executed by the decedent. Cordova v. Cordova, supra; Hallaron v. Pinewood Mall Shopping Center, Inc., 504 So.2d 922 (La.App. 1st Cir.1987). Instead, courts have applied the substantive law pertaining to the Civil Code's parol evidence rule, and the judicially recognized (and now express) exceptions for mutual error and simulation have not been defeated by application of the deadman's statute. We likewise find the statute has no application.
Accordingly, we find that the Defendants were not protected third parties to the alleged simulated sales to the Sonniers and, like their parents, may be personally bound for the obligations of the mutual agreement concerning those sales. Nevertheless, the Plaintiff seeks remedies against the Defendants concerning the reconveyance of title to the Property and an accounting for the bonus and royalties from the Devon Energy lease which, for the most part, do not apply to Defendants. The Property has been transferred by the Defendants to the LLC. The claim, however, concerning the Defendants may result in damages to the Plaintiff because of their alleged failure to return title to the Property and their execution of the mineral lease as an encumbrance on the ownership of the Property.[11] The trial court's summary judgment dismissing Plaintiff's claims against Defendants is therefore reversed.
Regarding Plaintiff's claim against the LLC, her petition alleged only the "Act of Exchange" executed by the Defendants which transferred the Property to the LLC. That transaction was recorded in 2004 prior to the recordation of the Blank Deed in 2005. The Plaintiff's petition also makes a conclusory allegation that all the Appellees were in bad faith. However, there are no fact allegations concerning when Defendants learned of Plaintiff's claim of the simulated sales to their parents. Likewise, there are no alleged facts elaborating on the "Act of Exchange," the consideration exchanged, the bad faith of the LLC upon its acquisition of the Property, or fraud. The description of the "Act of Exchange" does suggest that Defendants may have initially capitalized the LLC by transferring the Property to the LLC and obtaining membership interests totaling 100% of the LLC ownership.
As reviewed above, a simulation may result in the absolute nullity of the simulated act. Civil Code Article 2035 addresses the effect of an absolute nullity on third parties, which at the time of transfer of the Property to the LLC in 2004, read as follows:
Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.
If the contract involves immovable property, the principles of recordation apply.
In Mathews v. Mathews, 35,984 (La.App. 2d Cir.5/8/02), 817 So.2d 418, this court interpreted former Article 2035 and La. R.S. 9:2721, et seq. (repealed) and found that a donee of an immovable was not protected under the principles of recordation from the nullity of a contract previously in the chain of title to an immovable. That decision has now been effectively overruled by Act 169 of 2005 (effective July 1, 2006) which amended Article *361 2035[12] and which enacted new Article 3342. Article 3342 makes no distinction regarding the manner of acquisition of the immovable by a protected third party under the law of registry.
Since the Act of Exchange and the recordation of the Blank Deed occurred prior to the effective date of Act 169 of 2005, the Mathews rationale might govern if the Act of Exchange was shown to be a donation or some other act outside the protection of the law of registry expressed in the former revised statutes, La. R.S. 9:2721, et seq. Yet, from Plaintiff's meager allegation concerning the Act of Exchange and her arguments, no such assertions have been made.
Clearly, an onerous transfer or act of exchange to the LLC would afford it protection under principles of recordation and the public records doctrine before and after the passage of Act 169 of 2005. The transferee in the exchange of an immovable need only look to the public records to determine ownership and, if such records show no adverse claim of ownership, the transferee obtains good title from the record owner notwithstanding the transferee's personal knowledge of title defects outside the record. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909); Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481 (1957); Speights v. Nance, 142 So.2d 418 (La.App. 2d Cir.1962); Succession of Wilson v. Wilson, 509 So.2d 714 (La.App. 3d Cir.1987), writ denied, 512 So.2d 439 (La. 1987); Anglin v. Anglin, 05-1233 (La.App. 1st Cir.6/9/06), 938 So.2d 766.
On the strength of these principles of recordation and the weakness of the description of the Act of Exchange as alleged in Plaintiff's petition, the LLC's motion for summary judgment was based solely on the insufficiency of Plaintiff's fact pleading and the protection of the LLC's acquisition of the immovable as a matter of law. We agree with that assessment of the weakness of Plaintiff's claim. Nevertheless, in the setting of a motion for summary judgment decided solely on the allegation of the petition, the appellate court may notice the peremptory exception of no cause of action on its own. La. C.C.P. art. 927. As observed in Bush v. Fidelity & Deposit Co. of Maryland, 516 So.2d 1199 (La.App. 2d Cir.1987):
While we agree with the trial court's result, we note that summary judgment may not substitute for the peremptory exception of no cause of action and may not be granted because of the insufficiency of allegations. Wells v. St. Tammany Parish School Bd., 340 So.2d 1022 (La.App. 1st Cir.1976). Compare Owens v. Martin, 449 So.2d 448 (La.1984). Summary judgment is a final and definitive judgment. CCP Arts. 1841, 1842. The sustaining of an exception of no cause of action is not final because a plaintiff may be allowed to amend. Compare CCP Arts. 934, 968.
Id. at 1201. After making that observation, this court proceeded to set aside the summary judgment and, in its place in defendant's favor, granted the exception of no cause of action pursuant to the appellate court's power under La. C.C.P. arts. 927 and 2163. The case was remanded to allow the plaintiff the opportunity to attempt to allege a cause of action by amendment under La. C.C.P. art. 934.
In this case, a peremptory ruling of no cause of action is likewise the appropriate *362 procedure for dismissal of Plaintiff's claim against the LLC. We believe that in the interest of justice, considering the recorded act of acquisition by the LLC as alleged in Plaintiff's single allegation, the opportunity to amend the petition for the possibility of stating a cause of action against the LLC should be afforded Plaintiff. Accordingly, the judgment of the trial court dismissing the Plaintiff's claim is amended to reflect that the dismissal is on the peremptory ground of no cause of action. The judgment recognizing the LLC's reconventional demand for ownership of the Property is also reversed. The case is remanded to allow Plaintiff an attempt to amend the petition within thirty days of the finality of the judgment.

Conclusion
Regarding Plaintiff's claim against the Defendants, Andrea Sonnier Conner and Thomas Sonnier, we find that material fact issues exist for the resolution of the Plaintiff's claim of alleged simulated sales. Based upon our interpretation of Civil Code Articles 1848 and 2480, the evidence of Plaintiff's retained corporeal possession, the allegation of nonpayment of the price, and the Plaintiff's and the McEacherns' alleged intentions for the acts of the sale to the Sonniers and the Blank Deed raise fact issues which the Defendant's motion for summary judgment did not attempt to overcome. The summary judgment in favor of the Defendants is reversed.
Regarding the Plaintiff's claim against Diamond McCattle Company LLC, we amend the trial court's judgment of dismissal to reflect that the dismissal is on the peremptory ground of no cause of action. The case is remanded to allow Plaintiff to amend the petition in accordance with La. C.C.P. art. 934 within thirty days.
Costs of this appeal are assessed to Defendants, Andrea Sonnier Conner and Thomas Sonnier.
REVERSED IN PART; AMENDED IN PART, AND AS AMENDED, AFFIRMED AND REMANDED.
APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, DREW and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The deed does not state that Sharon McEachern acquired the property as her separate property. Therefore the transaction would be viewed from the face of the deed as the McEacherns' acquisition of community property.
[2] La. C.C. art. 2480 provides:

When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation.
[3] Former Civil Code Article 2276 provides: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
[4] The new codification of the exceptions to the parol evidence rule may be viewed as a departure from the former rigid rule, now allowing judicial discretion "in the interest of justice" to weigh the significance of the parol/extrinsic evidence. Prior to 1984, the jurisprudence had already taken that liberty without nearly as much codal authority as now granted by the express exceptions of Article 1848. After a survey of that jurisprudence contained in a 1975 law review article, Comment, Louisiana's Parol Evidence Rule: Civil Code Article 2276, 35 La.L.Rev. 779, 798 (1975), the comment correctly concluded with an observation that is now reflected in the express exceptions of Article 1848:

Although due weight would be accorded to the writing, at some point, the circumstances would lend such credence to the parol that its value would outweigh that of the writing especially when attendant circumstances indicate that the written instrument is not a valid, complete, and accurate manifestation of the intent of the parties.
Despite the broad language of article 2276, it appears that the Louisiana supreme court has followed just such a procedure without labeling it a balancing process.
[5] This revision comment, quoting a 1954 Tulane Law Review article, states: "It can be said quite unequivocally today that a supposed transferor cannot establish a simulation unless he produces a written counter letter." This comment was relied upon in Ridgedell v. Succession of Kuyrkendall, 98-1224 (La.App. 1st Cir.5/19/99), 740 So.2d 173, which dismissed the claims of parties challenging an alleged absolute simulation for failure to produce a written counterletter. The ruling appears correct because the plaintiffs were not parties to the simulation, the transfer under the alleged simulated sale conveyed only an undivided interest in the family-owned land, and the transferor and his spouse would be expected to continue in possession of the property with their stepson (the vendee). Article 2480 was therefore not implicated by the alleged facts.
[6] We acknowledge that earlier cases by the Louisiana Supreme Court held that the transferor of an alleged simulated act of sale could not violate the parol evidence rule of the former Article 2276 without a written counterletter executed by the purported vendee establishing that the sale as an absolute nullity. Godwin v. Neustadt, 42 La. Ann. 735, 7 So. 744 (1890); Templet v. Babbitt, 198 La. 810, 5 So.2d 13 (1941). However, in these cases in which the court refused to create a judicial exception to the parol evidence rule, continued corporeal possession of the vendor was not alleged and the court therefore did not address any argument that the legal presumption of simulation of Article 2480 should apply. Succession of Combre, supra, stands in contrast to the rigid pronouncement of the parol evidence rule in those cases, and on the strength of the vendor's continued corporeal possession, the court applied either a judicial exception or an Article 2480-based exception to the parol evidence rule and negated the effect of the prior act of sale with parol/extrinsic evidence.
[7] 1993 La. Acts 841 revised and re-enacted the articles "Of Sale" effective on January 1, 1995.
[8] The "parties," the vendor and the vendee to the sale, would be required to prove that their contract was not a simulation against a creditor of the seller. This is a different situation from claims between the parties covered by the expression of the rule in the first statement of the article, where only the vendee is subject to the presumption.
[9] With the McEacherns' intervention, all the party-plaintiffs are asserting the sequence of simulated sales, their mutual intent for Plaintiff to remain as owner of the Property and her retained continuous possession of the property. We find that these two simulated links in the chain of title and the alleged possession of Plaintiff allow for the presumption of Article 2480 to operate. Since the McEacherns' acts of sale reflect the direct simulated agreement with the Sonniers, the McEacherns, along with the Plaintiff, have standing to assert against Appellees their mutual agreement with the Sonniers for the simulation. Indeed the McEacherns are now recognized by this court as indispensable parties to this action to avoid the possibility of inconsistent rulings. La. C.C.P. arts. 927 and 641. The order by the trial court allowing the McEacherns' intervention as a party having an interest in the action was properly granted, yet it was granted eight days before a hearing which disposed of the action without the intervenors' participation, effectively defeating their interests.
[10] La. R.S. 13:3721 provides:

Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.
[11] The award of damages against the Defendants is permissible under Louisiana's system of fact pleading. As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and evidence. First South Production Credit Assoc. v. Georgia-Pacific, 585 So.2d 545 (La. 1991).
[12] The second sentence of Article 2035 now provides:

If the contract involves immovable property, the principles of recordation apply to a third person acquiring an interest in the property whether by onerous or gratuitous title.