CARAWAY, J.
], After an alleged act of donation and following the death of the donor, the donee executed an affidavit stating that her acceptance of the donation was for the purpose of conveying the property to another relative of the donor following the donor’s death. In a suit to set aside the act of donation by the administratrix of the donor’s succession, the trial court denied the donee’s exception of prescription. We granted a supervisory writ to review the trial court’s ruling and now affirm.

Facts

On July 11, 2008, a donation deed (“Donation”) which purported to donate all right, title, and interest in a 13.5-acre tract of land was executed by Jamie Lee Marshall in favor of Alice M. Sneed. The Donation was executed as an authentic act. The specific wording of the Donation states:
PERSONALLY came and appeared, Jamie Lee Marshall... Who by this formal Act of Donation, irrevocably gives and donates inter vivos; Donor who declared that in consideration of the natural love and affection which she has for Alice M. Sneed...
SAID donor did and by these presents, does given [sic], grant, convey, donate, assign, set over and deliver unto Alice M. Sneed, who is here present and accepting with gratitude, for herself, her successors and assigns, the following described property, to wit....
On May 30, 2009, Marshall died intestate and was survived by her two siblings, David Lee Marshall and Luella Marshall Dyise. On June 8, 2009, one day prior to recording the Donation, Sneed executed an affidavit (“Sneed Affidavit”) which declared that she was the listed donee in the Donation. The Sneed Affidavit then states the following:
That in accepting said donation, she intended to hold the said immovable property for GENNETTE ^MARSHALL, the niece of JAMIE LEE MARSHALL, under certain terms and conditions.
Affiant hereby declares that she is holding said immovable property for GENNETTE MARSHALL, and that in the event GENNETTE MARSHALL, is released from her current term of incarceration on or before June 9, 2014, affi-ant will convey said immovable property to GENNETTE MARSHALL. Affiant further declares that in the event GEN-NETTE MARSHALL is not released from her current term of incarceration on or before June 8, 2014, affiant will convey said property to HENRY L. MARSHALL.
Sneed later recorded the Donation and the Sneed Affidavit in the conveyance records on June 9, 2009, ten days after Marshall’s death. To date Sneed has not conveyed the tract at issue to either Gennette Marshall (“Gennette”) or Henry Marshall (“Henry”).
On December 17, 2014, Mildred Ware Scott, the administratrix of Jamie Lee Marshall’s estate (“the Succession”), filed a petition seeking to set aside the Dona *874 tion and recover damages from Sneed. The petition asserted the invalidity of the Donation on the grounds of fraud, duress, undue influence, and improper form. Nevertheless, the Sneed Affidavit was also alleged and a copy attached to the petition.
Sneed filed an answer and eventually asserted an exception of prescription. Sneed’s articulated basis for the exception of prescription was that any fraud associated with the Donation or any deficiency in the authentic act would have produced a relative nullity which prescribes in five years under La. C.C. art. 2032. On October 13, 2015, the Succession responded by filing an opposition to the exception, asserting that the Donation is an absolute nullity and imprescriptible.
la At the hearing on the exception, the entire record was offered and received into evidence without objection. This included the deposition of Sneed. Following arguments from both sides, the trial court denied the exception of prescription. Sneed subsequently filed an application for a supervisory writ which was granted by this Court.

Discussion

We first note Sneed’s objection raised during oral argument that the petition lacked a specific assertion regarding the simulation of the Donation. Fraud, duress, undue influence, and improper form were specifically raised in the petition. Nevertheless, those legal conclusions do not govern under Louisiana’s fact-pleading system. Louisiana’s Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations. Miller v. Thibeaux, 14-1107 (La. 1/28/15), 159 So.3d 426, 431. A final judgment must grant the relief which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and there has been no prayer for general and equitable relief. Id. at 431-432, citing La. C.C.P. art. 862.
The key fact asserted in the petition was the Sneed Affidavit, which, on its face, indicates that the Donation, by mutual agreement, did not express the true intent of the parties. This fact assertion raises the legal issue of a simulation. La. C.C. art. 2025. Moreover, Sneed offered the entire record at the hearing on the exception. This included Sneed’s deposition testimony concerning the parties’ intent for the Donation and Marshall’s continued possession of the property.
|/The Succession’s assertion that the Donation was a simulation was therefore properly at issue before the trial court. Sneed’s defense of 5-year prescription for the relative nullity of the Donation must be tested under our law regarding simulation.
The main challenge Sneed presents to the trial court’s ruling is that the use of parol or extrinsic evidence to negate the contents of Marshall’s authentic act of donation was improper. From this perspective, the court is not allowed to reach this issue of simulation by going outside the four corners of the Donation. The extrinsic evidence consists of the Affidavit, in which Sneed states that in accepting the donated property, she intended only to hold it for others. Likewise, in Sneed’s deposition testimony she confirmed that she did not want the property and that Marshall remained in possession of it. When specifically asked whether she intended “to take ownership of [Marshall’s] house,” Sneed responded, “No.” All of this evidence is claimed by Sneed to be inadmissible.
Under La. C.C. art. 2025, a contract is deemed to be a simulation when, by mutual agreement, it does not express the true intent of the parties. Further, a counterlet-ter is defined as a separate writing in which the true intent of the parties is *875 expressed. Building on those concepts, the code further distinguishes between absolute simulations and relative simulations. La. C.C. art. 2026 states that “a simulation is absolute when the parties intend that their contract shall produce no effects between them.” (Emphasis added). The intent that there be no effects is later enforced when, for example, an apparent transferee confirms by counterletter that the subject property is still owned by the transferor. In contrast, La. C.C. art. 2027 | ¿provides that “a simulation is relative when the parties intend that their contract shall produce effects between them though different from those recited in their contract.” (Emphasis added). This type of simulation takes place where, for example, the parties make an apparent sale while actually intending a donation.
In Sonnier v. Conner, 43,811 (La.App. 2 Cir. 12/3/08), 998 So.2d 344, writ denied, 09-0309 (La. 4/3/09), 6 So.3d 773, this court considered certain purported sales of land to determine whether they were, in fact, simulations. There, a party sought to introduce as a counterletter a signed and notarized deed by the transferee of the simulated sale. The deed contained a blank purchaser line and was offered in an effort to demonstrate that the prior sale had been a simulation. In addition, the party sought to introduce evidence of continued possession of a property by the vendor to support a presumption of an absolute simulation. This court looked to Civil Code Article 1848 which provides that, in the interest of justice, parol or extrinsic evidence may be introduced to show that a written act was an absolute simulation without the need for a written counterlet-ter.
Importantly, in Sonnier, we noted that some of the revision comments to the Civil Code articles drew a distinction between absolute and relative simulations, concerning the necessity of a written counterletter for proof of an absolute simulation. Finding that evidence of the vendor’s continued possession of the property and nonpayment of the price would be admissible to negate the written act of sale under Articles 1848 and 2480, this court determined that a written counterletter was not essential for proof of the alleged absolute simulation.
| (¡Following the Sonnier decision, the Louisiana legislature enacted La. C.C. art. 1849 which, in its first sentence, reiterates that testimonial or other evidence is admissible to prove a simulation or create or disprove a presumption of a simulation. Nevertheless, in its second sentence, Article 1849 now provides that a counterletter is required to prove an absolute simulation as between the parties in the case of an act purporting to transfer immovable property. The counterletter requirement is not applicable when a simulation is presumed. Comment (c) to Article 1849 further elaborates that testimonial evidence to prove a relative simulation is admissible. Revision Comment (c), La. C.C. art. 1849.
The first task in this case in determining the admissibility of testimonial or other extrinsic evidence to attack this Donation as an alleged simulation is to determine whether Article 1849’s requirement for a counterletter applies so as to make the Sneed Affidavit inadmissible. First, we note that the present simulation arguably may not be said to be “presumed” in law since the presumptive effect of the trans-feror’s continued possession is addressed in the Civil Code only in the case of a simulated sale under La. C.C. art. 2480.[1] *876 Thus, the “presumed” simulation exception to Article 1849’s counterletter rule may not apply in this donation setting. Second, the counterletter rule of Article 1849 only applies “between the parties.” From the context of the second sentence of Article 1849, “parties” apparently includes the actual parties to the simulated transaction and their heirs, except to the extent that a forced heir is seeking to prove an absolute ^simulation without a counterletter. Thus, in this case, since the Succession does not involve forced heirs, the counterletter rule may have application depending upon whether an absolute or relative simulation is claimed.
The two types of simulations, whether relative or absolute, depend on the parties’ mutual intent. La. C.C. arts. 2025, 2026 and 2027. In the absolute simulation, the grantor party intends for the parties’ written contract to produce no effects so that, in the case of a simulated conveyance of immovable property, written title is intended by the grantee to be restored to the grantor. The relative simulation occurs “when the parties intend that their contract shall produce effects between them though different from those recited in their contract.” La. C.C. art. 2027.
The Succession’s offering of the parol/extrinsic evidence can be considered to demonstrate a relative simulation. The parties’ motive or cause of the Donation was to (1) allow Marshall to remain as owner during her lifetime, and (2) eventually allow for the transfer by Sneed of Marshall’s property to one of Marshall’s family members after her death. The offered evidence shows that Marshall remained the apparent owner, "with the Donation unrecorded and with Marshall in possession until her death. Arguably, the parties’ overall motive to place ownership of Marshall’s property into either Gennette or Henry after Marshall’s death would result in a prohibited substitution. Cf La. C.C. arts. 1519, 1520, and 1572. Yet, the lack of a proper testamentary disposition for the transaction does not change the parties’ mutual intent to simulate the conveyance to Sneed to facilitate her later transfer of the property.
| «Moreover, Sneed’s Affidavit and deposition testimony address her intent for her acceptance of the Donation, an essential and somewhat separate component of a donation inter vivos. Louisiana Civil Code Article 1544 provides as follows:
A donation inter vivos is without effect until it is accepted by the donee. The acceptance shall be made during the lifetime of the donor.
The acceptance of a donation may be made in the act of donation or subsequently in writing.
Sneed’s expressions in the Affidavit and deposition indicate that her written acceptance of Marshall’s transfer of ownership of the property in the 2008 Donation was a sham. Her statements indicate that her acceptance of the ownership was to take place upon Marshall’s death, at which time she was to hold the property for the ultimate benefit and ownership of either Gen-nette or Henry. The admissibility of this extrinsic evidence to show Sneed’s acceptance after Marshall’s death is, in our opinion, within Article 1849’s allowance of proof of a simulation. Such postmortem acceptance raises a claim by the Succession for absolute nullity.
With this unique relative simulation intended by the Donation, we find that the trial court was permitted under Civil Code *877 Article 1849 to consider all of the above-described extrinsic evidence in holding that the Succession’s claim relates to a simulated contract. At this stage of the proceedings, before trial on the merits, we will consider that a claim for a simulated contract was sufficiently established by the pleadings and the evidentiary hearing on the exception. We will next consider the applicable prescriptive period.
laSneed asserts the 5-year prescription for a relatively null contract. La. C.C. art. 2032. “A contract is relatively null when it violates a rule intended for protection of private parties, as when a party ... did not give free consent at the time the contract was made.” La. C.C. art. 2031. A claim for a simulation contract rests upon the parties’ mutual agreement or the common consent and therefore is not a claim that no meeting of the minds occurred by the failure of one party to give free consent. “A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties.” La. C.C. art. 2025. A simulation, when proven, is a contract. The Succession’s claim is that a meeting of the minds occurred for a simulated act of donation. That is not the same as a claim that Marshall did not give free consent to any contract whatsoever. Accordingly, we do not find that the Succession seeks a remedy for nullity of a relatively null contract.
The jurisprudence discussing prescription for claims of simulations has indicated that an action to establish the contract as a simulation does not prescribe. Mills v. International Mgmt. Consultants, Inc., 425 So.2d 825 (La. App. 5th Cir. 1983); Kinney v. Kinney, 150 So.2d 671 (La. App. 3d Cir. 1963). If, upon trial, the Succession proves that the parties’ mutual agreement for the alleged simulated Donation was for an improper donation mortis causa or resulted in an improper acceptance by Sneed, an absolute nullity may be established. An action for the annulment of an absolutely null contract does not prescribe. La. C.C. art. 2030.

Conclusion

In summary, the Succession’s action seeks recognition of a simulation. The Donation is the alleged simulation and the extrinsic 1 inevidence considered by the trial court in its ruling on prescription is admissible evidence. The prescription of five years asserted by Sneed in her exception is inapplicable, and the trial court’s ruling is affirmed. Costs of appeal are assessed to defendant.
AFFIRMED.

. La. C.C. art. 2480 provides: When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and *876 creditors of the seller is concerned, the parties must show that their contract is not a simulation.