710 So.2d 354 (1998)
GAZEBO, INC., Jean and George Mellen
v.
CITY OF NEW ORLEANS, et al.
No. 97-C-2769.
Court of Appeal of Louisiana, Fourth Circuit.
March 23, 1998.
*355 Harry D. Hoskins, III, Hoskins & Hoskins, New Orleans, for Plaintiffs/Respondents.
Stuart H. Smith, Michael G. Stag, Gregory D. Guth, Law Offices Of Sacks & Smith, New Orleans, for Plaintiff-In-Intervention/Relator.
Evelyn F. Pugh, Deputy City Attorney, Deborah L. Wilson, Chief Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendants/Defendants-In Intervention/Respondents.
Before ARMSTRONG, PLOTKIN and WALTZER, JJ.
PLOTKIN, Judge.
The primary issue in this writ application is whether a party may assert a relative nullity based on alleged fraud and ill practices under the provisions of La. C.C.P. art. 2004 in a contradictory motion filed in the same proceeding as that which produced the offending judgment, rather than a separate petition in a separate proceeding. Because the relative nullity was raised by contradictory motion in the instant case, we affirm the trial court judgment granting the exception of improper use of summary proceedings and remand for further proceedings.

Facts
On August 6, 1997, Gazebo, Inc., and its owners and officers, Jean and George Mellen (hereinafter referred to collectively as "Gazebo") filed suit against the City of New Orleans seeking three things: (1) a temporary restraining order to prevent enforcement of zoning restrictions on live entertainment, (2) a preliminary injunction preventing enforcement of zoning restrictions on live entertainment, and (3) a writ of mandamus ordering the City to issue a live entertainment license in violation of zoning restrictions.
On August 11, 1997, Stuart Smith, a neighbor of Gazebo's establishment, "The Gazebo," filed a petition-in-intervention and third-party demand, naming both Gazebo and the City as defendants. This petition opposed the issuance of a live entertainment permit to Gazebo, sought a preliminary and permanent injunction to prohibit live entertainment, and requested rescission of any consent judgment which may be entered into the minutes. On August 12, 1997, Smith filed an amended petition pursuant to La. C.C.P. art. 1091, opposing "all Defendants-in-intervention as they have interests adverse to Petitioner-in-intervention." At that point, no judgment had been entered in the case.
On August 13, 1997, Smith and his attorney appeared for the hearing on the original preliminary injunction. They were advised that the matter was being continued for a week so that settlement discussions with Smith could continue. Attorneys for Gazebo and the City entered a joint motion to continue until August 21, which order was signed by the trial judge and entered on the minutes. On that same date, after Smith and his counsel left, Gazebo and the City entered into a consent judgment in which the City agreed to issue a live entertainment license to Gazebo, which judgment was signed by the duty judge.
When Smith discovered that this consent judgment had been entered, he filed a motion to vacate and set aside the judgment, combined with a motion for new trial and a motion for sanctions. Smith argued that the consent judgment was confected without his participation, despite the fact that the attorneys for Gazebo and the City were both aware of his petition-in-intervention. Smith further claims that the attorneys for Gazebo and the City failed to advise the judge who signed the consent judgment of the petition-in-intervention. The City and Gazebo filed exceptions of improper procedure, arguing that a judgment may not be annulled for fraud or ill practice under La. C.C.P. art. 2004 except by ordinary procedure.
The hearing on the motions and exceptions was originally set for October 10. That motion was continued to October 24, at which time neither Smith nor his counsel appeared.
*356 At the hearing, the trial judge accepted the arguments of the City and Gazebo that the proper procedure for annulling a judgment for alleged fraud and ill practices is by the filing of a petition and ordinary procedure, not by motion in the same proceeding. The transcript further indicates that the judge was reluctant to vacate a judgment signed by another judge. The judge thus granted the exceptions of improper procedure and denied the motion to vacate, set aside and annul the consent judgment, stating, in pertinent part, as follows:
The motion is denied. The reason for the denial is that this Court is unaware of any law or authority which allows a motion to set aside a judgment. A judgment, if it is to be vacated or annul [sic], must be vacated or annul [sic] by petition, an ordinary process, not a summary process.
Neither the transcript nor the written judgment mentions the motion for new trial.
Smith filed this application for supervisory writ relative to the trial court's rulings of October 24. In addition, as noted by the City as respondent, Smith also filed a motion for supplemental appeal, which was granted. However, the Form C attached to the opposition indicates that the appeal is relative to "Grant of permit/license in violation of city code"; thus, the appeal challenges only the August 13 consent judgment, not the October 24 ruling which is the subject of this writ.
La. C.C.P. art. 2004, relative to annulment of judgments for vices of substance, provides, in pertinent part, as follows:
A final judgment obtained by fraud or ill practices may be annulled.
Smith claims that the consent judgment granting the live entertainment license should be annulled because the attorneys for the City and Gazebo acted with fraud or ill practices when they presented the consent judgment to the duty judge for signature, but did not tell him about the petition-in-intervention, despite the fact they both were aware of the petition. The City and Gazebo dispute the allegations of fraud and ill-practice, claiming that they did not know that the petition-in-intervention had been filed and that they had not been served with a copy of the petition when the consent judgment was entered. They admit that they knew that Smith intended to intervene.
We note that Smith's allegations raise serious issues concerning both the actions of the attorneys representing the City and Gazebo and the validity of the judgment in question. In fact, if Smith's allegations are true, the consent judgment is unquestionably relatively null for fraud and ill practices. Moreover, the attorneys who secured the duty judge's signature on the consent judgment violated both the Louisiana Supreme Court Rules concerning "Lawyers' Duties to the Courts" and the Louisiana Code of Professionalism in the Courts. The Supreme Court Rules prohibit all attorneys practicing in the State of Louisiana from "knowingly misrepresent[ing], mischaracteriz[ing], misquot[ing], and miscit[ing] facts and authorities in any oral or written communication to the court." 698 So.2d LV (La.1997). Moreover, the Professionalism Code provides that lawyers "shall not knowingly" either "[m]ake a false statement of material fact or law to a tribunal," Rule 3.3(1), or "[c]onceal or knowingly fail to disclose that which he is required by law to reveal." Rule 3.3(2).
However, the trial court did not decide the merits of the motion for nullity, choosing instead to dismiss the motion on an exception of improper use of summary proceedings. Thus, the true issue before this court is whether Smith's motion was properly dismissed.
Traditionally, Louisiana appellate courts have imposed a requirement that an action for nullity based on fraud or ill practices be brought in an ordinary proceeding, rather than collaterally in a summary proceeding. See Bonaventure v. Pourciau, 577 So.2d 742 (La.App. 1st Cir.1991); Jarred v. Continental Insurance Co., 575 So.2d 496 (La.App. 3d Cir.1991); Charia v. Mungoven, 550 So.2d 939 (La.App. 5th Cir.1989); Ledford v. Pipes, 507 So.2d 9 (La.App. 2d Cir.1987); Viso v. Favie, 502 So.2d 1130 (La.App. 4th Cir.1987), writ denied, 503 So.2d 465 (La.1987). That rule is reflected in Official Revision Comment (d) to La. C.C.P. art. 2004, which states as follows:

*357 No specific provision has been made regarding the manner of asserting the grounds of nullity in the above article. This was thought unnecessary in view of the established jurisprudence to the effect that such grounds must be asserted in a direct action and cannot be raised collaterally.
(Citations omitted.)
However, in several relatively recent opinions, this court has led a movement which has eroded the strict rule requiring that an action for nullity based on fraud and ill practices be brought in a separate proceeding. In Succession of Schulz, 622 So.2d 693 (La. App. 4th Cir.1993), this court stated as follows:
We feel that the prohibition that has developed in the jurisprudence against bringing an LSA-C.C.P. art.2004 action for nullity for fraud or ill practices in the same proceedings in which the judgment was rendered is needlessly technical and restrictive. There is no compelling reason requiring such a technical rule. No article in the Code of Civil Procedure requires it. Our Supreme Court has never addressed the issue directly.
Id. at 696, fn. 3.
The Schulz panel suggested that the problem has been caused by confusion concerning the expansion of the definition of the word "direct action" "to require that a petition to annul be filed in an entirely new and separate proceeding," as well as the expansion of the definition of the word "collaterally" "to include the proceeding in which the judgment was rendered." Id. at 697. Asserting that the word "collaterally" "was intended to apply only to proceedings other than those in which the judgment complained of was rendered and which were not brought for the purpose of annulling the judgment," the court offered the following example:
For example, a judgment of possession in a succession could not be annulled for fraud or ill practices in a petitory action in which that judgment forms part of the chain of title. But we see no reason why a petition for nullity could not be filed in the succession itself as long as all proper parties are designated and served as with any other petition and citation. In fact, that is probably the best place to file as that will be where all the records will most likely and conveniently be found. That judge will be most familiar with the case. Such a petition should be considered a "direct" action, not a collateral action.
Id., fn. 3. Finally, the Schulz court asserted that the proper meaning to be ascribed to the term "direct action" is that an action for nullity for fraud and ill practices "cannot be asserted obliquely, for example, as defenses in an answer, etc., in another proceeding in which the judgment may have some impact, i.e., a true collateral proceeding." Id.
A subsequent panel of this court, in Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4th Cir.1993), expanded the ideas asserted in Schulz, stating as follows:
We agree that filing a separate proceeding would be a direct action. But a pleading filed in the same proceeding as that in which the offending judgment was rendered would not only be "direct", but most direct. The limitation envisioned by LSA-C.C.P. art. 2004 Comment (d) was one which prevents the nullity from being asserted in a totally unrelated proceeding, i.e., a collateral proceedingnot a prohibition against raising it in the very same proceeding in which it was rendered, which is arguably the best place to raise it.
Id. at 316, fn. 5.
However, despite all the language in both Schulz and Zatzkis, this court has never held that an action for relative nullity based on fraud and ill practices may be asserted in the same proceeding as that which produced the offending judgment. That distinction goes to the Louisiana First Circuit Court of Appeal, which held in Roach v. Pearl, 95-1573 (La. App. 1 Cir. 5/10/96), 673 So.2d 691, that the requirement that an action for nullity based on fraud or ill practices be brought in a "direct action" does not prevent a party from seeking to have a judgment annulled in the same proceeding that resulted in the offending judgment. After citing both the Schulz case and the Zatzkis case extensively, the Roach court stated as follows:

*358 We, too, believe the prohibition is against the issue being raised by way of affirmative defense such as in the answer or by exception. Clearly, any of those methods would be a collateral attack that is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling the judgment. We see no prohibition or adverse effects to allowing the filing of a petition for nullity asserting fraud and ill practices in the same proceedings as the offending judgment. Rather, such is in the interest of judicial economy. Therefore, we find that the petition for nullity was properly filed within the original action in the instant case.
Id. at 694.
Thus, a majority of the members of this court have now expressed a view consistent with that adopted in the Roach case, indicating that a party should be allowed to assert an action for nullity based on fraud or ill practices by filing a petition in the same case which produced the offending judgment. Such a procedure is considered the most direct and efficient method of attacking an allegedly relatively null judgment, as well as the most judicially expeditious. Thus, the fact that the Smith raised the issue of nullity in the same proceeding as that which resulted in the offending judgment does not pose a problem in the instant case.
On the other hand, as the trial court held, the fact that Smith raised the alleged nullity by filing a motion for nullity, rather than a petition for nullity, is a problem. The asserting of an alleged nullity through the filing of a motion has never been sanctioned either by this court or by the Louisiana Third Circuit Court of Appeal's opinion in Roach. Accordingly, the trial court judgment dismissing the motion to vacate on an exception of improper use of summary proceedings is affirmed.

Motion for new trial
We note also that the trial judge failed to rule on the motion for new trial, either orally or in the subsequent written judgment. Thus, the trial judge is ordered to rule on that motion on remand. Moreover, because the motion for new trial has not been decided, the appeal is hereby dismissed as premature.

Conclusion
The trial court judgment dismissing Smith's motion for nullity on an exception of improper use of summary proceedings is affirmed. The case is remanded for disposition of the motion for new trial and for further proceedings consistent with this decision.

AFFIRMED AND REMANDED.
ARMSTRONG, J., concurs with reasons.
ARMSTRONG, Judge, concurring with reasons.
I concur in the holding that an issue of relative nullity of a judgment may be raised by petition rather than by motion. I do not believe that any additional issue is presented in this application. In particular, I see no reason to question the propriety of the actions of any of the attorneys below, given that, as the majority notes, the trial court did not decide the merits of the motion for nullity.