CORRECTED COPY

| | | |
|---|---|---|
| **DERRICK R. BRESTON** | * | **NO. 2023-CA-0460** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **DH CATERING, LLC, DELISA** | * | |
| **HAYES, ROBERT P.** | | **FOURTH CIRCUIT** |
| **SCHMIDT, MUFEED, LLC,** | * | |
| **AND XYZ INSURANCE** | | **STATE OF LOUISIANA** |
| **COMPANIES FOR NAMED** | * * * * * * * | |
| **DEFENDANTS** | | |

**CONSOLIDATED WITH:**                    **CONSOLIDATED WITH:**

**DERRICK R. BRESTON,**                    **NO. 2023-CA-0461**
**INDIVIDUALLY AND AS**
**INDEPENDENT**
**ADMINISTRATOR OF THE**
**SUCCESSION OF MADELIENE**
**SIMON**

**VERSUS**

**MUFEED, LLC**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-01613, DIVISION "D"
Honorable Inemesit O'Boyle, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Rachael D. Johnson)

James E. Uschold
Mark J. Boudreau
Paul W. Pritchett
JAMES E. USCHOLD, PLC
700 Camp Street, Suite 317
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT

Ryan M. McCabe
DWYER, CAMBRE & SUFFERN

**CORRECTED COPY**

3000 W. Esplanade Ave
Suite 200
Metaire, LA 70002

COUNSEL FOR DEFENDANT/APPELLEE

**JUDGMENT REVERSED IN PART;**
**JUDGMENT VACATED IN PART;**
**JUDGMENT ANNULLED;**
**REMANDED**

**FEBRUARY 05, 2024**

PAB
RLB
RDJ

This civil action arises from a property dispute over certain immovable property located at 4115 Royal Street, New Orleans, Louisiana 70117 (the "Property") and involves claims of fraud and forgery. Appellant, Derrick R. Breston ("Mr. Breston"), appeals the district court's January 27, 2023 judgment,[1] which denied Mr. Breston's motion for summary judgment seeking to annul the district court's April 22, 2022 judgment and granted summary judgment in favor of Appellee, Mufeed, LLC ("Mufeed"), dismissing Mr. Breston's claims with prejudice. The April 22, 2022 judgment conferred one hundred percent ownership of the Property to Mufeed. For the reasons that follow, we vacate that portion of the district court's January 27, 2023 judgment granting Mufeed's motion for summary judgment, dismissing all of Mr. Breston's claims against it with prejudice; we reverse that portion of the district court's January 27, 2023 judgment denying Mr. Breston's motion for summary judgment; we find the district court's

---

[1] In his brief to this Court, Mr. Breston purports to seek review of a January 20, 2023 final judgment. However, our review of the record indicates that January 20, 2023, was the day of the hearing on Mr. Breston's and Mufeed's competing motions for summary judgment. The notice of judgment related to that hearing reveals that the judgment was signed on January 27, 2023, and mailed on February 7, 2023. In response to Mr. Breston's January 22, 2023 request, the district court later issued its written reasons for judgment, which was both signed and mailed on March 30, 2023.

1

April 22, 2022 judgment to be absolutely null; and we remand this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 1996, Mr. Breston and his mother, Madeliene Simon ("Ms. Simon"), jointly purchased the Property from Greater New Orleans Homestead, FSB, by virtue of a cash sale in the amount of twenty thousand dollars ($20,000.00). This purchase was subsequently recorded in the Orleans Parish conveyance records on October 16, 1996. Ms. Simon passed away on December 21, 2018; nevertheless, a quitclaim deed, which ostensibly contained both Ms. Simon's and Mr. Breston's signatures, was executed on October 13, 2020, transferring all of their interest in the Property to DH Catering, LLC ("DH Catering"), for the purchase price of ten dollars ($10.00) "and other good and valuable consideration." This instrument was recorded in the conveyance records on November 9, 2020.

Signing on behalf of DH Catering was Delisa Hayes ("Ms. Hayes") who, according to the Louisiana Secretary of State's online business filings, was the sole member and agent for service of process for the LLC.[2] The quitclaim deed bore the notary public stamp of Robert P. Schmidt ("Mr. Schmidt") and contained a statement that the document was acknowledged before him by Ms. Simon and Mr. Breston.[3] Shortly thereafter, on January 13, 2021, DH Catering entered into a cash

---

[2] Interestingly, DH Catering, LLC was formed on October 13, 2020—the same day the quitclaim deed was executed.
https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=1493657_111425C344
*See Vescovo v. Air & Liquid Sys. Corp.*, 2023-0116, p. 10 (La. App. 4 Cir. 11/15/23), ___ So.3d ___, ___, n.7, 2023 WL 7638681, at *5 (holding that "[t]his Court can take judicial notice of government websites") (citing *State in Interest of K.B.*, 2023-0409, p. 9 (La. App. 4 Cir. 9/26/23), ___ So.3d ___, ___ n.12, 2023 WL 6226289, at *4).

2

sale for the Property with Jonathan Burden ("Mr. Burden") for the purchase price of thirty-five thousand dollars ($35,000.00).[4] On the very same day Mr. Burden conveyed the Property to Mufeed in a separate cash sale for the purchase price of one hundred thousand dollars ($100,000.00). Both cash sales were facilitated by Gulf South Title Corp.

It is unclear from the record how, but Mr. Breston quickly caught wind of the multiple transfers of the Property that had been recorded in the conveyance records and obtained counsel. Consequently, on February 22, 2021, Mr. Breston's counsel, Ja'Net Davis ("Ms. Davis") filed a petition on his behalf to annul the quitclaim deed on the grounds of fraud and ill practice, along with a request for written notice.[5] The petition named as defendants DH Catering, Ms. Hayes, Mr. Schmidt, Mufeed and XYZ Insurance Companies. Attached to the petition was a copy of the quitclaim deed, a copy of Ms. Simon's death certificate and a printout of an online obituary announcing Ms. Simon's death. Following, on June 17, 2021, Mr. Breston filed an amended petition for damages and motion for appointment of private process server, additionally naming Gulf South Title and Mr. Burden as defendants.[6] Because Mufeed is the only active defendant in this

---

[3] It is also of note that on Ms. Simon's death certificate and the cash sale deed conveying the Property to her and Mr. Breston, her first name is spelled "Madeliene," whereas on the quitclaim deed, her first name is printed and signed with the spelling "Madeline."

[4] Carolyn Lofton executed all the documents in this transaction on behalf of DH Catering LLC, pursuant to a certificate of authority signed by Ms. Hayes.

[5] Pursuant to La. C.C.P. art. 1572:

> The clerk shall give written notice of the date of the trial whenever a written request therefor is filed in the record or is made by registered mail by a party or counsel of record. This notice shall be mailed by the clerk, by certified mail, properly stamped and addressed, at least ten days before the date fixed for the trial. The provisions of this article may be waived by all counsel of record at a pre-trial conference.

3

appeal, our discussion will be limited to matters relevant to the litigation between it and Mr. Breston.

On June 18, 2021, Mufeed filed a peremptory exception of no cause of action and a dilatory exception of unauthorized use of a summary proceeding; however, counsel for both parties were able to resolve these exceptions extrajudicially. Shortly thereafter, on July 6, 2021, Mufeed filed an answer with affirmative defenses to Mr. Breston's petition, as well as cross claims and third party demands against its codefendants. As affirmative defenses, Mufeed asserted, *inter alia*, that Mr. Breston's claims were barred by the public records doctrine[7] and that Mr. Breston had failed to join an indispensable party to the action, namely the co-owner of the Property. A few months later, on February 1, 2022, Mufeed filed a motion for summary judgment against Mr. Breston (for ease of discussion, this action will hereinafter be referred to as "*Breston I*"). In its motion Mufeed argued that: (1) on its face, the quitclaim deed recorded in the conveyance records appeared to be in authentic form, as defined by La. C.C. art. 1833;[8] (2) there was no indication of Mr. Breston's claim to the Property or else it would not have moved forward with its purchase of the Property; (3) it was an innocent third party in the transaction, therefore it should be able to rely on the public records doctrine for any adverse claims asserted against its ownership; and (4) Louisiana Civil Code article 2035[9] is controlling in regards to absolute nullities and innocent third

---

[6] The motion for appointment of private process server indicated that service had been unsuccessfully attempted five times on DH Catering and Ms. Hayes.

[7] The public records doctrine will be more fully discussed *infra*.

[8] Louisiana Civil Code article 1833 will be more fully discussed *infra*.

[9] Louisiana Civil Code article 2035 will be more fully discussed *infra*.

parties. Mufeed contended that the allegation of forgery was immaterial, but acknowledged that it could be assumed to be true for purposes of deciding the motion. Prior to filing its motion for summary judgment in *Breston I*, Mufeed's counsel asserted that it voluntarily made a full document production and provided an advance copy of the motion to Mr. Breston's counsel. Because Ms. Davis did not request any additional discovery, Mufeed filed its summary judgment motion on February 1, 2023, sent Mr. Breston's counsel another courtesy copy of its motion that day, and attempted to formally serve her via email and certified mail with the filed motion and rule to show cause on February 8, 2022.[10] The rule to show cause was granted, and the hearing date for the motion was set for April 22, 2022.

Mufeed did not receive any responses to its correspondence, no opposition to the motion for summary judgment was filed by Mr. Breston, and neither Ms. Davis nor Mr. Breston were present at the April 22, 2022 hearing. At the hearing, there was some discussion between the district court and Mufeed's counsel, Ryan McCabe ("Mr. McCabe"), relating to whether Mr. Breston had been served with the motion for summary judgment or the hearing date. Mufeed also offered a very brief argument that the quitclaim deed was valid on its face; therefore, Mufeed was entitled to be named full owner of the Property because Mr. Breston had not presented any opposition to rebut the presumption that there was a valid chain of title to the Property. Ultimately, this was the position adopted by the district court

---

[10] Attached to the motion for summary judgment, Mufeed provided a copy of an email confirmation delivery receipt, but did not provide proof of delivery of the certified mail. Mufeed also attached a copy of the quitclaim deed and all of the other transfers related to the Property, which are found in the Orleans Parish conveyance records.

and, finding that it had nothing to consider in rebuttal to Mufeed's motion for summary judgment, it granted the motion in favor of Mufeed.

On July 27, 2022, Mr. Breston filed a motion to vacate judgment on vices of form, based upon the allegation that service was not properly effectuated, as mandated by La. C.C.P. arts. 1313[11] and 1314,[12] for either the motion for summary judgment or the hearing date. In this pleading, Ms. Davis, as counsel of record, explained that the emailed motions had been delivered to her junk email box and that the certified mailings had never reached her. Therefore, Mr. Breston contended, that the district court's judgment should be annulled in accordance with La. C.C.P. art. 2002(A)(2), which provides that:

A. A final judgment shall be annulled if it is rendered:

\* \* \*

---

[11] Louisiana Code of Civil Procedure article 1313 provides, in pertinent part:

A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:

\* \* \*

(4) Transmitting a copy by electronic means to counsel of record, or if there is no counsel of record, to the adverse party, at the number or addresses expressly designated in a pleading or other writing for receipt of electronic service. Service by electronic means is complete upon transmission but is not effective and shall not be certified if the serving party learns the transmission did not reach the party to be served.

B. When service is made by mail, delivery, or electronic means, the party or counsel making the service shall file in the record a certificate of the manner in which service was made.

C. Notwithstanding Paragraph A of this Article, if a pleading or order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314, by actual delivery by a commercial courier, or by emailing the document to the email address designated by counsel or the party. Service by electronic means is complete upon transmission, provided that the sender receives an electronic confirmation of delivery.

[12] Louisiana Code of Civil Procedure article 1314 provides for service by the sheriff, which is not at issue in this case.

6

(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid default judgment has not been taken.

A short time later, Mr. Breston filed a corrected motion to vacate on August 5, 2022.

On September 1, 2022, Mufeed filed a memorandum in opposition to Mr. Breston's motion to vacate. In this pleading, Mufeed asserted that because it had received an electronic confirmation of delivery,[13] service was effectuated as provided for in La. C.C.P. art. 1313(C). Mufeed advanced the argument that, under the plain language of La. C.C.P. art. 1313, it was irrelevant whether the email went to Ms. Davis' junk email box. Further, it was incumbent upon Ms. Davis to check her junk email more frequently than every few months, especially in light of the pending litigation. In support, and because of the dearth of Louisiana jurisprudence in this area, Mufeed cited to several Federal court cases. Those cases universally found that the diversion of an email to a junk email or "spam" box did not justify vacating a judgment for lack of service of process.

On September 5, 2022, a motion was filed on behalf of Mr. Breston to substitute James E. Uschold ("Mr. Uschold") as counsel of record in place of Ms. Davis, which was granted the following day. Following the substitution, on September 7, 2022, Mr. Breston's new counsel filed a *Reply/Supplemental Memorandum in Support of Motion to Vacate Judgment*. After discussing lack of proper service by Mufeed as an absolute nullity, lack of service from the Orleans Parish Clerk of Court as a relative nullity and the proper procedural vehicles with

---

[13] A copy of which was attached to Mufeed's motion for summary judgment and the memorandum in opposition to the motion to vacate for vices of form.

7

which to challenge those nullities, Mr. Breston raised for the first time that the purported transfer of the Property evidenced by the quitclaim deed is an absolute nullity because it was not executed via an authentic act.

Mr. Breston's motion to vacate came for hearing on September 9, 2022.[14] The district court explained to counsel that the court had not yet received a copy of Mr. Breston's *Reply/Supplemental Memorandum in Support of Motion to Vacate Judgment*, which appeared to contain some new arguments, and would therefore continue the hearing until a later date in order to review that pleading. From the bench, the presiding judge expressed a strong desire to "make sure this gets fixed," because of the apparent forgery of the deceased Ms. Simon's signature on the quitclaim deed. Counsel for Mufeed agreed that something untoward appeared to have happened regarding the transfer of the Property to DH Catering, and offered that Mufeed had previously assumed that the quitclaim was forged for purposes of its summary judgment argument. Prior to the district court resetting the hearing to October 14, 2022, Mr. Breston's counsel indicated that he believed the more proper procedural method to proceed would be for him to file a petition to annul the April 22, 2022 judgment and to withdraw Mr. Breston's motion to vacate. Judge Ervin-Knott agreed.

Accordingly, in a separate action, *Derrick R. Breston, Individually and as the Independent Administrator of the Succession of Madeliene Simon v. Mufeed,*

---

[14] Judge Nakisha Ervin-Knott presided over this hearing, as well as the April 22, 2022 hearing on Mufeed's motion for summary judgment.

*LLC*, Civil District Court No. 2022-08793, Division B-5, Mr. Breston filed a petition to annul judgment on September 20, 2022. On the same day, Mr. Breston filed an unopposed motion to transfer and consolidate the new action with the original action, *Derrick R. Breston v. DH Catering, LLC, Delisa Hayes, Robert P. Schmidt, Mufeed, LLC and XYZ Insurance Companies for Named Defendants*, Civil District Court No. 2021-1613, Division D-12. The motion was granted on September 22, 2022.

A few weeks later, on November 16, 2022, Mr. Breston filed a motion for summary judgment (this action hereinafter referred to as "*Breston II*"). This motion sought to annul not only the quitclaim deed as an absolute nullity, but also the cash sale conveying the Property from Mr. Burden to Mufeed. Additionally, Mr. Breston requested that the district court declare him to be fifty-percent owner of the Property and to declare the remaining fifty percent of the Property to be owned by Ms. Simon as part of her succession. Further, Mr. Breston sought to annul the judgment in *Breston I* as an absolute nullity for lack of service, pursuant to La. C.C.P. art. 2002. Mr. Breston also asserted that the *Breston I* judgment was a nullity because the Orleans Parish Clerk of Court failed to provide notice of the summary judgment hearing as mandated by La. C.C.P. art. 1572. Finally, he urged the district court to find that the judgment was a nullity based upon the "ill practices" of the clerk of court when it failed to provide him notice, as provided for in La. C.C.P. art. 2004.[15] Included in the many attachments to Mr. Breston's

---

[15] Louisiana Code of Civil Procedure article 2004(A) provides that "[a] final judgment obtained by fraud or ill practices may be annulled."

motion for summary judgment were copies of the quitclaim deed that purported to transfer the Property to DH Catering, Ms. Simon's death certificate and Mr. Breston's affidavit, in which he attested that he did not sign the quitclaim deed, that the copy of Ms. Simon's death certificate was a true and correct copy and that Ms. Simon died on December 21, 2018.

Mufeed filed its own motion for summary judgment on November 18, 2022. In this motion, Mufeed argued that service was effectuated on Mr. Breston by email. Further, Mufeed asserted that, in spite of Ms. Davis' claim that the notice of signing of judgment for *Breston I* was never received and that she did not learn of the judgment until July 1, 2022, there were various emails from the title company seeking to remove a *lis pendens* filed on the Property in connection with *Breston I*, which should have put her on notice that there was a judgment rendered against Mr. Breston. Mufeed also argued that the *Breston I* judgment would have been more properly raised on appeal rather than filing a motion to vacate or a petition to annul, because none of the "ill practices" alleged in Mr. Breston's original petition to annul the quitclaim deed were those contemplated under La. C.C.P. art. 2004.

The competing motions for summary judgment came for hearing before the district court on January 20, 2023, this time before a different presiding judge.[16] After hearing argument of counsel, the district court stated that it intended to grant summary judgment in favor of Mufeed and dismiss any claims against it with

---

[16] Judge Ervin-Knott was elected to the Louisiana Fourth Circuit Court of Appeal and assumed office on January 1, 2023. Inemesit O'Boyle was appointed by the Louisiana Supreme Court to sit as Judge *Pro Tempore* in Civil District Court, Division D.

prejudice.  In the district court's judgment signed on January 27, 2023, it denied Mr. Breston's motion for summary judgment, granted summary judgment in favor of Mufeed, dismissing the claims against it with prejudice, and admitted into evidence all exhibits attached to the parties' motions and supporting memoranda.[17]

On March 30, 2023, the district court issued reasons for judgment relating to its January 27, 2023 judgment.  First, the court found that under La. C.C.P. art. 1572, the clerk of court was only required to give notice of trial dates, not hearings on exceptions or rules; therefore, the clerk's failure to provide Mr. Breston with notice of the April 22, 2022 summary judgment hearing was not an ill practice and the judgment was not a nullity on that basis.  Further, the court reasoned that service was effectuated on Mr. Breston's counsel via email and that the delivery confirmation receipt provided by Mufeed satisfied the requirements of La. C.C.P. art. 1313(C).  The court explained that Mr. Breston had not asserted any allegations against Mufeed, that Mufeed had not participated in the alleged forgery and that Mufeed's reliance on the apparent validity of the recorded quitclaim deed invoked the public records doctrine, thereby making Mufeed the rightful owner of the Property.  Finally, the court declined to discuss Mr. Breston's assertion that the failure to join an indispensable party was a basis for nullity because he did not raise the issue in his motion for summary judgment; rather, the issue was not raised

_____

[17] The district court's judgment also overruled objections raised by Mr. Breston regarding some of the exhibits attached to Mufeed's memorandum in opposition to his motion for summary judgment.

11

until he filed his reply memorandum in support of the motion for summary judgment.

In the interim, on February 3, 2023, Mr. Breston timely filed a motion for a new trial on the January 27, 2023 judgment. A contradictory hearing was held on April 21, 2023. After considering the arguments of counsel, the district court denied Mr. Breston's motion for new trial, finding that he had not presented any newly discovered evidence[18] and that there was no good ground for it to exercise its discretion[19] because instead of filing an appeal, Mr. Breston filed a petition to annul the April 22, 2022 judgment.

This timely appeal followed.

**STANDARD OF REVIEW**

"It is well-settled law that '[t]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Williams v. Infirmary*, 23-0180, p. 6 (La. App. 4 Cir. 12/20/23), ___ So.3d ____, ____, 2023 WL 8798466, at *3 (quoting *Sebble on Behalf of Est. of Brown v. St. Luke's #2, LLC*, 22-0620, p. 4 (La. App. 4 Cir. 3/6/23), 358 So.3d 1030, 1034). "Generally,

---

[18] Louisiana Code of Civil Procedure article 1972 provides, in pertinent part:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> * * *
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

[19] Louisiana Code of Civil Procedure article 1973 provides that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

12

on a motion for summary judgment, the burden of proof remains with the mover." *Id.* (quoting *Everett v. Air Prods. & Chems., Inc.*, 22-0539, p. 6 (La. App. 4 Cir. 5/2/23), ___ So.3d ____, ____, 2023 WL 3193154, at *3). "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.*, 23-0180, pp. 6-7, 2023 WL 8798466 at *3 (quoting *Cooper v. Brisco*, 22-0196, p. 4 (La. App. 4 Cir. 10/18/22), 366 So.3d 552, 555). "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id.* (quoting *Cooper*, 22-0196, pp. 4-5, 366 So.3d at 556).

## JURISDICTION

"Before considering the merits of any appeal, an appellate court has 'the duty to determine *sua sponte* whether [proper] jurisdiction exists, even when the parties do not raise the issue.'" *Succession of Hickman*, 22-0730, p. 5 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 589 (alteration in original) (quoting *Lirette v. Adams*, 22-0552, p. 17 (La. App. 4 Cir. 1/31/23), ___ So.3d ____, ____, 2023 WL 1252737, at *9). In this appeal, Mr. Breston seeks to have this Court review the district court's judgment granting summary judgment in favor of Mufeed; the district court's judgment denying his motion for summary judgment; and the district court's denial of his motion for a new trial.

"As this Court has unequivocally held, '[t]he Code of Civil Procedure expressly provides that a judgment denying a motion for summary judgment is not appealable.'" *Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, pp. 8-9 (La. App. 4 Cir. 10/3/23), ___, So.3d ____, ____, 2023 WL 6428340, at *4 (quoting *Elysian, Inc. v. Neal Auction Co., Inc.*, 20-0674, p. 7 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1082); *see also* La. C.C.P. art. 968, which provides, in pertinent part, that "[a]n appeal does not lie from the court's refusal to render . . . summary judgment". Further, "[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." La. C.C.P. art. 1841. "Thus, 'the denial of a motion for new trial is not a final, appealable judgment.'" *Succession of Hickman*, 22-0730, p. 6, 359 So.3d at 590 (quoting *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 17-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So. 3d 682, 688, n. 12).

"However, an appellate court may consider interlocutory judgments . . . as part of an unrestricted appeal from a final judgment." *Precept*, 23-0104, p. 9, 2023 WL 6428340, at *4 (quoting *Everett*, 22-0539, p. 3, 2023 WL 3193154, at *7). And as "[t]his Court has explained, '[a]lthough the denial of a motion for summary judgment is not appealable, the granting of summary judgment is a final judgment with the same effect as if a trial had been had upon evidence regularly adduced.'" *Id.*, 23-0104, p. 10, 2023 WL 6428340, at *4 (quoting *Valentino v. Jenkins*, 12-1672, p. 2 (La. App. 4 Cir. 6/5/13), 119 So.3d 798, 800). Accordingly, we will

14

consider Mr. Breston's challenge to the district court's interlocutory judgments together with his unrestricted appeal.

## DISCUSSION

Mr. Breston presents five assignments of error,[20] which all claim the district court was errant in failing to declare *Breston I* an absolute nullity. However, before addressing the merits of Mr. Breston's arguments, we find it necessary to address the issue raised by both Mufeed and the district court—namely, whether the judgment in *Breston I* is foreclosed from review by this Court because Mr. Breston employed an improper procedural vehicle, *i.e.*, a petition to annul, rather than challenging that judgment by appeal.

*Petition to Annul*

---

[20] Mr. Breston asserts the following assignments of error:

1. The trial court erred in failing to declare the judgment in [*Breston I*] an absolute nullity due to the failure of defendant Mufeed, LLC to properly serve the motion for summary judgment on Breston's counsel.

2. The trial court erred in failing to declare the judgment in [*Breston I*] an absolute nullity due to the failure of the clerk of court to send notice of the summary judgment hearing as required by [La. C.C.P.] Art. 1572.

3. The trial court erred in incorrectly applying the public records doctrine, in failing to declare the forged quitclaim deed an absolute nullity, and in failing to annul the judgment in [*Breston I*].

4. The [trial] court erred in failing to annul the judgment in [*Breston I*] on the grounds of ill practice.

5. The trial court erred in failing to declare the judgment in [*Breston I*] an absolute nullity for failure to join the [U]nopened [S]uccession of Madeliene Simon as a necessary party based on her 50% ownership interest.

Mr. Breston has presented multiple arguments throughout the course of this litigation, many of which directly relate to sufficiency of service—specifically, that *Breston I* was an absolute nullity based upon improper service of Mufeed's motion for summary judgment.[21] As this Court has previously discussed, "[g]enerally, a question regarding the sufficiency of service of process cannot be raised for the first time on appeal and should be raised in a suit to annul." *Sutton v. Adams*, 19-0992, p. 7 (La. App. 4 Cir. 10/12/22), 351 So.3d 427, 434, *rev'd on other grounds* (first citing *Corte v. Cash Technologies, Inc.*, 02-0846, p. 7 (La. App. 1 Cir. 4/2/03), 843 So.2d 1162, 1166; then citing *State, Dept. of Social Services v. Matthews*, 96-711, p. 5 (La. App. 5 Cir. 1/28/97), 688 So.2d 137, 140). "The justification for requiring a defendant to bring a separate suit to annul a judgment for insufficient service is to permit a hearing with the introduction of evidence to ascertain facts regarding whether [the] defendant was properly served." *Hall v. Dep't of Pub. Saftey and Corrections*, 22-374, p. 5 (La. App. 5 Cir. 7/26/23), 374 So.3d 139, 144 (citing *Tour Holdings, L.L.C. v. Larre*, 18-0503, p. 4 (La. App. 1 Cir. 12/6/18), 267 So.3d 735, 737). Both the *Sutton* and *Hall* Courts reviewed assertions of nullity of judgment brought under La. C.C.P. art. 2002—insufficiency of service.

In *Hyde v. Cash Control Sys.*, 14-0258 (La. App. 4 Cir. 9/3/14), 150 So.3d 7, this Court was called upon to consider a claim of nullity of a judgment arising

---

[21] We note that the codal articles pertaining to nullity of judgments implicate differing prescriptive periods based upon whether the judgment is considered an absolute nullity or a relative nullity. However, because prescription is not relevant in the case *sub judice*, we pretermit any discussion of relative versus absolute nullities.

under La. C.C.P. art. 2004—fraud or ill practice.  There, we explained that "[t]he law requires that an action for nullity pursuant to La. C.C.P. art. 2004 must be brought in a direct action, rather than a summary proceeding.  *Id.*, 14-0258, p. 6, 150 So.3d at 12 (citing *Gazebo, Inc. v. City of New Orleans*, 97–2769, pp. 7-8 (La. App. 4 Cir. 3/23/98), 710 So.2d 354, 358).  "A 'direct action' means that the party praying for the nullity of judgment must bring his action by means of a petition and the adverse party must be cited to appear."  *Id.* at n.8 (quoting *Lowe's Home Const., L.L.C. v. Lips*, p. 5 (La. App. 5 Cir. 1/25/11), 61 So.3d 12, 16).[22]

Thus, the jurisprudence is clear that whether a claim for nullity of a judgment arises under La. C.C.P. art. 2002 or art. 2004, as presented in this case, the proper vehicle for such challenges is a petition for nullity.  Consequently, we find that Mr. Breston's petition to annul judgment was the correct method by which to attack the *Breston I* judgment.  Therefore, we conclude that the *Breston I* and *Breston II* judgments are equally ripe for review by this Court.

Having found that the *Breston I* and *Breston II* judgments are properly before this Court, we next must determine whether the district court erred by finding that no genuine issue of material fact exists when it was presented with *prima facie* evidence that at least one of the signatures present on the quitclaim deed belonged to a signatory who had been deceased for nearly two years before the quitclaim deed was executed.

---

[22] *See also Deutsche Bank Nat'l Trust Co. v. Carter*, 10-663, p. 8 (La. App. 5 Cir. 1/25/11), 59 So.3d 1282, 1286 (wherein that court propounded that "[a] motion to vacate is not a direct action. Rather, it is a summary proceeding, which does not require citation and other formalities required in ordinary proceedings." (citing La. C.C.P. art. 2591; then citing *Taylor v. Hixson Autoplex of Alexandria, Inc.*, 00–1096, p. 10 (La. App. 3 Cir. 3/28/01), 781 So.2d 1282, 1288)).

*Quitclaim Deed and the Public Records Doctrine*

Before addressing the competing arguments of Mr. Breston and Mufeed, we will engage in a brief discussion of the public records doctrine and the codal articles applicable to the case *sub judice*.

Generally speaking, "Louisiana's public policy stating that interest in real estate must be recorded in order to effect third persons is known as the public records doctrine." *Ely Edwards Enterprises, Inc. v. Pontchartrain Park CDC Real Est. Holdings, LLC*, 21-0623, p. 6 (La. App. 4 Cir. 4/13/22), 338 So.3d 50, 53 (citing *Cimarex Energy Co. v. Mauboules*, 09-1170, p. 18 (La. 4/9/10), 40 So.3d 931, 943). This doctrine has long been ensconced in Louisiana jurisprudence, tracing its roots all the way back to the 1770s during the Spanish colonial period. *See* Dian Tooley-Knoblett and David Gruning, *History of the public records doctrine in Louisiana—An overview*, in 24 LOUISIANA CIVIL LAW TREATISE § 8:3 (November 2023). After various permutations and re-codifications, the public records doctrine now resides in the Civil Code at La. C.C. art. 3338, which provides, in pertinent part:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> \* \* \*
>
> (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

"The primary purpose of the public records doctrine is the protection of third persons from unrecorded interests." *Ely Edwards*, 21-0623, p. 6, 338 So.3d at 53 (citing *Cimarex*, 09-1170, p. 18, 40 So.3d at 943). "According to the public records doctrine, an instrument in writing affecting immovable property which is not recorded is considered null and void except between the parties." *Id.* "In this regard, the doctrine is considered a negative doctrine because it denies the effect of certain rights unless they are recorded." *Id.*; *see Camel v. Waller*, 526 So.2d 1086, 1089-90 (La. 1988).

Relatedly, La. C.C. art. 1839 provides direction for the form in which a writing affecting immovable property must be made:

> A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.

> An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.

Further, La. C.C. art. 2440 mandates that:

> A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839.

Louisiana Civil Code article 1833 defines an authentic act. It provides in pertinent part that:

> A. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act.

> B. To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the

same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it. The failure to include the typed or hand-printed name of each person signing the act shall not affect the validity or authenticity of the act.

And finally, La. C.C. art. 1835 instructs that:

An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title.

Mufeed contends that according to the public records doctrine, because the quitclaim deed purporting to convey the Property to DH Catering appeared to be a valid authentic act on its face and was properly recorded in the conveyance records, a presumption was created as to the validity of the quitclaim; therefore, Mufeed was entitled to reasonably rely on the recorded instrument. As an innocent third party twice removed from the transaction involving the quitclaim and who did not participate in any wrongdoing, Mufeed argues Mr. Breston can no longer recover the Property. In support of this interpretation, Mufeed offers three cases: (1) *In re D'Anna*, 548 B.R. 155, 170 (E.D. La. Bankr. 2016) (wherein the federal district court observed, "Louisiana law generally requires that proof of an interest in immovable property be in writing and recorded to be effective against third persons."); *Owen v. Owen*, 336 So.2d 782, 788 (La. 1976) (where our Supreme Court held that "even if the title which passed to the sons could be declared absolutely null while the property remained in their hands, when the property passed into the hands of an innocent third party purchasing in reliance on the public records, the claimants could no longer recover the property."); and *Sonnier v. Conner*, 43,811, p. 27 (La. App. 2 Cir. 12/3/08), 998 So. 2d 344, 361 (wherein the appellate court found that "[t]he transferee in the exchange of an immovable

20

need only look to the public records to determine ownership and, if such records show no adverse claim of ownership, the transferee obtains good title from the record owner notwithstanding the transferee's personal knowledge of title defects outside the record.").[23]  Moreover, Mufeed asserts, La. C.C. art. 2035 codifies this view of protection for innocent third-party purchasers when it directs:

> Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.
>
> If the contract involves immovable property, the principles of recordation apply to a third person acquiring an interest in the property whether by onerous or gratuitous title.

Therefore, Mufeed contends that even if the contract of sale involving the quitclaim deed were found to be a nullity, as a third party in good faith, its interest in the Property should not be impaired.

In contrast, Mr. Breston  posits that the *Breston I* judgment is an absolute nullity because the quitclaim deed that purported to transfer the Property from Mr. Breston and Ms. Simon to DH Catering was a forgery and not in authentic form; therefore, the deed was translative of nothing, did not create any rights in the Property in favor of DH Catering and the subsequent cash sales could not convey the Property to the successive putative purchasers. Mr. Breston highlights our Supreme Court's pronouncement in *Pitre v. Peltier*, 79 So.2d 746, 749 (La. 1955), in which it opined that "forgery is in derogation of public order and good morals, is not susceptible of ratification, and can never be prescribed against."  To bolster this position, Mr. Breston cites to La. C.C. art. 2030, which provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

---

[23] We will address these cases more fully *infra*.

> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

Additionally, Mr. Breston asserts that the second paragraph of La. C.C. art. 2035, pertaining to immovable property, invokes the public records doctrine; therefore, because the doctrine is a negative doctrine, Mufeed could not attain any rights to the Property by virtue of the recorded quitclaim deed when forgery is implicated, and its reliance on the validity of the deed was misplaced. In support, he directs us to La. C.C. art. 3341, which provides in relevant part:

> The recordation of an instrument:
>
> (1) Does not create a presumption that the instrument is valid or genuine.

Lastly, Mr. Breston offers the case of *New Era Dev. Corp. v. Robert*, 12-304 (La. App. 5 Cir. 11/13/12), 105 So.3d 889, for the proposition that a forged instrument that is signed by a deceased signatory cannot constitute an authentic act, which would necessarily make any attempted transfers of immovable property by this means absolutely null. After consideration, we find Mr. Breston's arguments to be compelling.

First, we agree with Mr. Breston that the second paragraph of La. C.C. art. 2035 requires us to analyze the matter before us by use of the public records doctrine. For guidance, we return to the decision in *Cimarex*. There, in order to further clarify the negative nature of the public records doctrine, the Court explained that "third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded." *Cimarex*, 09-1170, p. 20, 40 So.3d at 944 (citing *Camel*, 526 So.2d at 1090). Further, "[w]hile a third party is entitled to rely on the absence from the public record of those interests that are required to be

22

recorded, the public records doctrine does not provide that a third party may rely implicitly on what is shown in a recorded instrument . . . ." *Id.* Neither "does [the public records doctrine] provide that a third party who relies on a recorded instrument can acquire good title from a vendor who does not have good title." *Id.* "Simply put, 'the rule that what is not recorded is not effective does not mean that what is recorded is effective at all events, despite forgery or any other defect.'" *Id.* (quoting Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems*, 39 Tul. L. Rev. 491, 501 (1965)).[24]

Next, we find the cases cited to by Mufeed for the premise that it is an innocent third party entitled to reasonably rely on the recorded quitclaim deed are inapposite to the facts presented in the case before us. Those cases dealt with fraudulent transfers of immovable property either by simulated sales, disguised donations or by selling an interest in property that did not belong to the vendor. However, in each of those cases the purported vendors were actual signatories to the fraudulent transfers and none of them involved claims that the conveyances were in inauthentic form or that forgery was involved. In fact, the *D'Anna* court reiterated that "[t]he public records doctrine . . . '[d]oes not create a presumption that the instrument is valid or genuine.'" *D'Anna*, 548 B.R. at 167 (quoting La. C.C. art. 3341(2)).

We find the analogous case of *New Era Dev. Corp. v. Robert* to be more instructive to our determination. In that case, a son forged his deceased father's signature on an act of cash sale for a certain piece of immovable property that

---

[24] *See also* Peter S. Title, *Negative nature of the public records doctrine*, in 1 LOUISIANA PRACTICE REAL ESTATE § 8:16 (2d ed., 2023) ("As a negative doctrine rather than a source of rights, the public records doctrine does not entitle third parties to rely on forged instruments . . . .").

belonged to the father's succession. The other party to the cash sale subsequently executed a quitclaim deed, which transferred the piece of property to New Era Development Corporation ("New Era"). As in the case before us, there was no dispute that the signature of the deceased signatory was a forgery. The *New Era* court reasoned that a forged signature could never qualify as an authentic act or an act under private signature. As a result, the court found that the initial cash sale did not transfer the immovable property and that the subsequent quitclaim deed was likewise ineffective because that party had never acquired any rights in the property. Although New Era was an innocent party to the transaction, the court nonetheless found that the cash sale and quitclaim deed were absolute nullities, and returned the property to the father's succession.[25] Applying this reasoning to the case under review, we find the *Breston I* judgment to be absolutely null. As such, we pretermit any discussion of the remainder of Mr. Breston's assignments of error.

In conclusion, our review of Louisiana law and jurisprudence applied to the facts before us leads us to adduce that the *Breston II* judgment was rendered in error. As in the *New Era* case, there is no dispute in the case *sub judice* that the signature affixed to the quitclaim deed purporting to be that of Ms. Simon was a forgery. Accordingly, the quitclaim deed at issue here cannot qualify as an authentic act or an act under private signature and cannot offer full proof of the agreement it contains; therefore, the attempted transfer of immovable property to DH Catering was without effect. Furthermore, because DH Catering never truly

---

[25] *See also* Peter S. Title, *Preferred status of an authentic act*, in 1 LOUISIANA PRACTICE REAL ESTATE § 7:16 (2d ed., 2023) ("In the absence of forgery, a conveyance in authentic form is presumed genuine.").

acquired any rights in the Property, the subsequent cash sales to Mr. Burden and Mufeed were equally ineffective. As such, based upon our *de novo* review, we find the district court erred in *Breston II* when it denied Mr. Breston's motion for summary judgment and granted summary judgment in favor of Mufeed, dismissing all of Mr. Breston's claims against it with prejudice. Having found that there was no valid transfer of the Property by way of the quitclaim deed or the subsequent cash sales, the Property is to be returned to the possession of the original Property owners, reserving Mufeed's rights to pursue any viable claims for damages and reimbursement to which it may be entitled.

## DECREE

For the foregoing reasons, we reverse that portion of the district court's January 27, 2023 judgment denying Mr. Breston's motion for summary judgment; we vacate that portion of the district court's January 27, 2023 judgment granting Mufeed's motion for summary judgment, dismissing all of Mr. Breston's claims against it with prejudice; we find the district court's April 22, 2022 judgment to be absolutely null; and we remand this matter for further proceedings consistent with this opinion.

**JUDGMENT REVERSED IN PART;**
**JUDGMENT VACATED IN PART;**
**JUDGMENT ANNULLED;**
**REMANDED**